IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re:                                        )
                                              )
ELLIPSO, INC.                                 )
                                              )        Case No: 09-00148
        Debtor.                               )        (Chapter 11)
                                              )
_____

CONSOLIDATED DISCLOSURE STATEMENT
AND PLAN OF REORGANIZATION UNDER CHAPTER 11
OF THE UNITED STATES CODE
SUBMITTED BY CREDITOR, JOHN B. MANN

JOHN B. MANN, an unsecured Creditor, files this Consolidated Disclosure Statement

and Chapter 11 Plan in the above-captioned chapter 11 case.

I.      **INTRODUCTION**

John B. Mann, ("Mann") an unsecured Creditor, submits this consolidated Disclosure

Statement and Chapter 11 Plan (the "Plan") to all of the Debtor's known Creditors and Interest

holders in connection with the Debtor's Chapter 11 Case (the "Bankruptcy Case"). The Plan and

Disclosure Statement have been developed based upon a review and analysis of the Debtor's

financial condition, and rehabilitation alternatives.  The Plan provides for transfer of all equity

interests in Debtor to Mann, reorganization of the business and for payment of administrative

expense claims, deferred cash payments on secured claims and priority tax claims, and *pro rata*

payments on claims of unsecured creditors.  Mann believes that the Plan provides fair and

equitable treatment of all classes of Creditors and Interest Holders and the greatest feasible

recovery to Creditors and Interest Holders. Accordingly, Mann requests that all Creditors and

Interest Holders in Impaired Classes vote to accept the Plan.

II.    **DISCLOSURE STATEMENT**

    A.  *Purpose and General Information*

    Pursuant to section 1125 of the Bankruptcy Code ( 11 U.S.C. § 1125), Mann submits this Disclosure Statement to provide Creditors and Interest Holders with adequate information to allow them to make an informed judgment about the acceptability of the Plan.  Specifically, the purpose of this Disclosure Statement is to give Creditors and Interest Holders sufficient information, as far as it is reasonably practicable for Mann to provide, that would allow a hypothetical reasonable investor typical of the holders of Claims and Interests in the classes Impaired under the Plan to make an informed judgment about whether to accept or reject the Plan.  Terms defined in the Plan (In Section III below) shall have the same meaning in this Disclosure Statement. The first letter of words defined in the Plan is capitalized in this Disclosure Statement.  Please refer to the Plan for the treatment of Claims and Interests.  The provisions of the Plan are binding on all Creditors and Interest Holders, therefore, please read the Plan carefully.

    **NO REPRESENTATIONS ABOUT THE DEBTOR, PARTICULARLY ABOUT THE DEBTOR'S FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY, ARE AUTHORIZED BY MANN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY CREDITOR OR INTEREST HOLDER. ANY ADDITIONAL REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED TO COUNSEL**

FOR MANN OR TO THE UNITED STATES TRUSTEE WHO, IN TURN, SHALL DELIVER THE INFORMATION TO THE BANKRUPTCY COURT OR TAKE OTHER APPROPRIATE ACTION.

ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO REVIEW IN FULL THE PLAN AND THIS DISCLOSURE STATEMENT TOGETHER WITH ALL EXHIBITS ATTACHED THERETO, PRIOR TO VOTING ON THE PLAN, AND MAY DESIRE TO CONSULT LEGAL COUNSEL PRIOR TO VOTING TO ENSURE COMPLETE UNDERSTANDING OF THEIR TREATMENT UNDER THE PLAN. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS AND INTEREST HOLDERS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED DECISION ABOUT THE PLAN.

EACH CREDITOR AND INTEREST HOLDER IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO IT UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS. THE MANN MAKES NO WARRANTIES OR REPRESENTATIONS REGARDING THE TAX IMPACT OF THE PLAN ON ANY CREDITOR OR INTEREST HOLDER.

RISKS AND OPPORTUNITIES ARE IDENTIFIED IN THE DISCLOSURE STATEMENT CONCERNING MANN'S ABILITY TO PERFORM UNDER THE PLAN. THE RISKS AND OPPORTUNITIES ARE DISCUSSED IN ARTICLE 8(b) OF THIS DISCLOSURE STATEMENT.

MANN BELIEVES THAT THE PLAN IS FEASIBLE, FAIR AND EQUITABLE AND THAT CONFIRMATION OF THE PLAN IS IN THE BEST OF INTERESTS OF CREDITORS AND INTEREST HOLDERS.

B.     *Manner of Voting*

i. <u>Classes Entitled to Vote</u>. The Plan divides the Claims of Creditors and Interest Holders into Three (3) classes.  Only classes of Creditors and Interest Holders with claims or interests impaired under a plan of reorganization are entitled to vote on a plan.  Generally, and subject to the specific provisions of the Bankruptcy Code, this includes creditors and interest holders whose claims or interests, under a plan, will be modified in terms of principal, interest, length of time for payment, or a combination of the above.  Each holder of a Claim in a Class that is not Impaired under the Plan is conclusively presumed to have accepted the Plan, and solicitation of acceptances from the holders of such Claims is not required and will not be undertaken.

All classes of Creditors are Impaired under the Plan.  Class I  (Unsecured Priority Claims of the Internal Revenue Service, the District of Columbia, and the State of Delaware) is impaired in that the Mann proposes to pay such claims in deferred cash payments, with a single lump sum payment to occur in the fifth year of the Plan; Class II (consisting of general unsecured claims ) is impaired in that the Mann proposes to pay such claims over five years, in an amount equal to the allowed amount of such claims. Class III (Equity Interest Holders) is impaired in that Mann proposes to make no payments to such Interest Holders.  Accordingly, all classes are entitled to vote to accept or reject the Plan.

ii. <u>Procedure For Voting</u>. All Creditors and Interest Holders entitled to vote may cast their vote by completing, dating, and signing the Ballot included with this Disclosure Statement and mailing it to:

> Ellipso, Inc. (Debtor)
> c/o Augustus T. Curtis, Esq.
> 926 St. Paul Street
> Baltimore, MD 21202

**IN ORDER TO BE COUNTED, THE COMPLETED BALLOT MUST BE RECEIVED NO LATER THAN _____. A BALLOT DOES NOT CONSTITUTE A VALID PROOF OF CLAIM IN THE DEBTOR'S CASE.**

      *C.     Confirmation of the Plan*

      i. <u>Solicitation of Acceptance of the Plan</u>. This Disclosure Statement has been approved by the Bankruptcy Court in accordance with <u>section 1125 of the Bankruptcy Code</u> ( <u>11 U.S.C. § 1125</u>) and has been provided to all Creditors and Interest Holders in this Case. This Disclosure Statement is intended to assist Creditors and Interest Holders with their evaluation of the Plan and their decision to accept or reject the Plan. Your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement at the time of, or before, such solicitation.

      ii. <u>Votes Considered in Determining Acceptance of the Plan</u>. When acceptance of the Plan is determined by the Bankruptcy Court, in accordance with <u>Bankruptcy Code Section 1126</u> ( <u>11 U.S.C. § 1126</u>) and <u>Rule 3018 of the Federal Rules of Bankruptcy Procedure</u>, votes of Creditors and Interest Holders will only be counted if submitted by Ballot by the time set for submission thereof.

      iii. <u>Hearing on Confirmation of the Plan</u>. The Bankruptcy Court has set a hearing to determine if the Plan has been accepted by the required number of holders of Claims and Interests and if other requirements for Confirmation of the Plan outlined in the Bankruptcy Code have been satisfied.   A notice of such hearing is enclosed with this Plan and Disclosure Statement.  Such notice also provides information concerning the proper method, and time limits, for submitting objections to confirmation of the Plan.

iv. <u>Determining Whether Impaired Classes Have Accepted the Plan</u>. At the scheduled hearing on Confirmation of the Plan, the Bankruptcy Court must determine, among other things, if the Plan has been accepted by each Impaired Class. Under <u>section 1126(c) of the Bankruptcy Code</u> ( <u>11 U.S.C. § 1126(c)</u>), an Impaired Class of Claims is deemed to have accepted the Plan if Class members holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of all Allowed Claims of Class members actually voting have voted in favor of the Plan. Under <u>§ 1126(d) of the Bankruptcy Code</u> ( <u>11 U.S.C. § 1126(d)</u>), an Impaired Class of Interests is deemed to have accepted the Plan if Class members holding at least two-thirds (2/3) in amount of the Allowed Interests of Class members actually voting have voted in favor of the Plan. Further, under <u>section 1129 of the Bankruptcy Code</u> ( <u>11 U.S.C. § 1129(a)(7)(A)(ii)</u>), the Bankruptcy Court must also find that each member of an Impaired Class either votes to accept the plan or will receive or retain as much under the Plan as the member would receive or retain if the Debtor were liquidated, as of the Effective Date of the Plan, under Chapter 7 of the Bankruptcy Code. This is known as the "best interest of creditors' test."

v. <u>Confirmation of the Plan Without Consent of all Impaired Classes</u>.  The Plan may be confirmed even if not accepted by all Impaired classes, if the Bankruptcy Court finds that all other requirements of Confirmation under <u>section 1129(a) of the Bankruptcy Code</u> ( <u>11 U.S.C. § 1129(a)</u>) are satisfied and certain additional conditions are met. These conditions are set forth in <u>section 1129(b) of the Bankruptcy Code</u> ( <u>11 U.S.C. § 1129(b)</u>), and require, generally, a showing that the Plan does not discriminate unfairly and that the Plan is "fair and equitable" with respect to each Class of Claims and Interests that is Impaired under, and has not accepted, the Plan. In order to be "fair and equitable" as required by <u>section 1129(b) of the Bankruptcy Code</u>, the Plan must provide that Unsecured Creditors and Interest Holders in non-consenting, Impaired

6

classes will either receive or retain on account of their Claims or Interests, property of a value, as of the Effective Date of the Plan, at least equal to the value of such Claims or Interests or, if they receive less than full value, no Class with a junior priority will receive or retain anything on account of such junior Claim or Interest. For Secured Creditors, the Plan will be "fair and equitable" under Section 1129(b) if Secured Creditors either (i) retain the liens securing their claims and receive deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of the Secured Creditor's interest in such property, (ii) if the property securing their claim is to be sold, their liens will attach to the proceeds, or (iii) Secured Creditors will receive the "indubitable equivalent" of their Secured Claims. These are complex statutory provisions and this summary is not intended to be a complete statement of the law. If the Plan is not accepted by an Impaired Class or Classes, the Debtor will rely on the "cramdown" provisions of section 1129(b) of the Bankruptcy Code and seek Confirmation of the Plan.

D.    *The Parties*

i.    John B. Mann is a businessman and entrepreneur who has been involved in the telecommunications and satellite industry for more than thirty years.  He has management experience with satellite companies as well as businesses in reorganization.  [expand]

ii.    Ellipso, Inc.  The Debtor is a corporation organized and operating under the laws of Delaware. The Debtor is a non-operating satellite communications development company which has expended almost $100,000,000 in attempting to launch an elliptical orbital system. Debtor does not have, and never has had, any operational communications business.  David Castiel, who holds the majority of the equity interests in Debtor has been attempting to market this system for more than a decade, without success.  He has caused Debtor to be involved in

7

more than twenty law suits during the past five years, squandering Debtor's resources and reputation, often on personal vendettas.

iii.    <u>Factors Precipitating Chapter 11 Filing</u>.  In 2005, David Castiel caused Debtor to instigate a "bad faith" law suit against Mann and several creditors.  As a consequence of this bad faith suit, Debtor was sanctioned in excess of $300,000 by Chief Judge Royce C. Lamberth, United States District Court for the District of Columbia.  When Mann and other creditors attempted to collect that sanction, Debtor filed for bankruptcy protection.  The filling was necessitated, at least in major part, because David Castiel over the past four years had taken almost all liquid and semi-liquid assets (in an amount of $2,000,000 to $4,000,000) from Debtor and converted them to his personal enjoyment.

On February 25, 2009, the Debtor filed with this Court a Petition under Chapter 11 of the United States Bankruptcy Code, *11 U.S.C. § 101 et seq.* (the "Code").  The Debtor continues to maintain possession of its property and operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Code.

iv..    <u>Debtor's Recent Financial Results</u>.  The Debtor has no operating business and has had no operating business since at least 2006, maintaining its operations by the sale of assets.  Debtor's principle office is a post office box.  Debtor's telephone is a cell phone in the possession of David Castiel.  Debtor has no employees and only one full time consultant.  Debtor has no audited financials, or even proper financial statements.  Debtor has no revenues, and has had none for the past three years.  The major operating expense has been, and continues to be, the compensation paid to its principle owner and CEO, David Castiel.  Monthly operating reports filed with the Bankruptcy Court and the United States Trustee demonstrate that the Debtor is administratively insolvent and lacks the ability to conclude the present Chapter 11 case.

E.    *Prospects for Reorganization by Debtor*

    i. Requirements.    The launch of a new satellite constellation requires approximately $2,000,000,000.    There is currently no market to support another telecommunications satellite system and even less appetite in the investment community for such an expenditure.

    ii.    Realities.    With $10,000,000 in debts; no proper or audited financials; and no liquid assets, Debtor's ability to attract new capital is non-existent.    Debtor's reputation, acquired by David Castiel's stewardship, for being litigious (including suits against industry giants Bill Gates and Craig McCaw) adds a further handicap to Debtor's ability to reorganize under Castiel's tutelage.

F.    *Summary Of Debtor's Assets And Liabilities*

    i. Assets.    As of the Petition Date, the nature and value of the Debtor's assets as shown on its schedules were as follows:  1) a debt of $4,501,703 from a wholly owned subsidiary which Debtor's counsel described as a bookkeeping entry and which has no value; 2) an arbitration claim for $600,000 against an entity with no assets which has no value; 3) cash of $68,000 and 166,908 shares of ICOG stock with a value of $41,000 held in an account at TD Ameritrade, all of which has been applied to post petition costs;  4) a minimum amount of office equipment (one computer and one cell phone); and 5) stock in several subsidiaries, two of which hold intellectual property in the form of twenty fore (24) patents pertaining to Debtor's prospective satellite business.    David Castiel, Debtor's principle owner, Chairman of the Board, Chief Operating Officer, President, Corporate Secretary, and Corporate Treasurer, described these patents as having no current value, but some long term value provided they could be properly marketed.

    ii.    Liabilities.    The Debtor's Schedules list approximately $10,000,000.00 in unsecured non-priority indebtedness in this matter, consisting of claims of general unsecured creditors.

9

G.    *Alternatives To Confirmation And Consummation Of The Plan.*

i.    <u>Alternative Plans of Reorganization</u>.  If the requisite acceptances are not received or if the Plan is not confirmed, the Debtor, or any other party in interest, could attempt to formulate and propose a different plan or plans of reorganization. Such a plan or plans might involve either a reorganization and continuation of the Debtor's businesses or an orderly liquidation of assets.

With respect to an alternative plan, Mann has examined various alternatives in connection with formulations and development of the Plan. Mann believes that the Plan enables Creditors and Interest Holders to realize the greatest possible value under the circumstances and, compared to any alternative plan of reorganization, has the greatest chance to be confirmed and consummated.  No plan of liquidation would yield any significant recovery to any creditors.

ii.    <u>Liquidation Analysis</u>  When evaluating the terms of the Plan, each Creditor and Interest holder belonging to an Impaired Class should compare their treatment under the Plan with how they would be treated if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  This Liquidation analysis of the Debtor was prepared as of the Date of this plan. The detailed liquidation analysis is attached as Exhibit I to this Plan and Disclosure Statement. Mann used his best efforts to arrive at the liquidation values which are reflected in Exhibit I. As set forth below and in Exhibit I, Mann's liquidation analysis shows that unsecured creditors will receive substantially greater value under the Plan than they would if the Debtor were liquidated. In fact, the liquidation analysis shows that in a Chapter 7 liquidation Mann anticipates that unsecured creditors would receive nothing and shareholders in the Debtor would have no opportunity for any recovery.

H.    *Certain Federal Income Tax Consequences Of The Plan*

i.      <u>Federal Income Tax Consequences to the Debtor</u>.  At the present moment, the Debtor is insolvent, and accordingly, Mann does not believe the company will recognize income through the cancellation of any indebtedness through this Plan.

ii.     <u>Federal Income Tax Consequences to Creditors and Interest Holders.</u>  The recovery of funds through the Chapter 11 Case may carry federal tax consequences for creditors and interest holders in the Debtor.  In regard to creditors, in the event any creditor has utilized write-offs or otherwise taken Federal tax losses as a result of the non-payment of any obligations by the Debtor, it is possible that the recovery of funds herein could result in a recognition of income, or otherwise generate tax consequences.  All creditors and interest holders are encouraged to consult appropriate tax professionals before making a determination whether to support                                    the                                    plan.

*I.      Effect                            Of                            Confirmation.*

The provisions of the Debtor's Plan of Reorganization, if confirmed, shall bind the Debtor, all Creditors, Interest holders, and any entity acquiring property under the Plan, whether or not the Claim or Interest of such Creditor, Interest holder, or entity is impaired under the Plan and whether or not such Creditor, Interest holder, or entity has accepted the Plan.

## III.    CHAPTER 11 PLAN OF REORGANIZATION.

This Chapter 11 plan is proposed pursuant to Section 1121 of the United States Bankruptcy Code by John B. Mann, a Creditor, in the above-referenced matter.

## <u>ARTICLE I: DEFINITIONS</u>

Unless the context otherwise requires, the following terms shall have the respective meanings set forth below, except as expressly provided otherwise.

1.1 **<u>Administrative Expense Claim</u>**: Any cost or expense of administration of the Case allowed by the Court pursuant to Section 503(b) of the Code, including, without limitation, any actual and necessary Post-Petition expenses of preserving the Debtor's estate and any actual and necessary Post-Petition expenses of operating the business of the Debtor, including any allowances of compensation or reimbursement of expenses to the extent allowed by the Court under Sections 330 and 331 of the Code and any fees or charges, including post-confirmation fees, assessed against the Debtor's estate under Section 1930, Chapter 123 and Section 586, Chapter 30 of Title 28 of the United States Code, but excluding claims of the type identified in 11                                    U.S.C.                                    §502(f).

1.2 **Allowed Claim**: Refers to any Claim (a) with respect to which a proof of claim has been filed with the Court on or before the date fixed by the Court; or (b) that is listed in a schedule and a list of creditors prepared and filed with the Court pursuant to Rule 1007 and not listed as disputed, contingent or unliquidated as to amount; and, in either case, as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by an Order of the Court or the Plan, or which is no longer subject to appeal, or (c) which has otherwise been allowed by, or pursuant to, Order of the Court which is no longer subject to appeal. Unless otherwise specified in the Plan, "Allowed Claim" shall not include (I) interest on the principal amount of the Allowed Claim from and after the Petition Date, or (ii) any punitive damages.

1.3 **Assumed Liabilities**: The obligation of the Debtor to distribute Collected Cash pursuant to the Plan.

1.4 **Ballot**: The form(s) distributed to each Creditor holding an Allowed Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

1.5 **Ballot Date:** The date set by the Court by which all votes for acceptance or rejection of the Plan must be received by the balloting agent.

1.6 **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure pursuant to Title 28 of the United States Code, 28 U.S.C. §§ 2075, as they have been or may hereafter be amended.

1.7 **Business Day:** Any day except a Saturday, Sunday or any other day on which commercial banks in the District of Columbia are authorized or required by applicable law to close.

1.8 **Case**: The Chapter 11 bankruptcy case of Elipso, Inc., 09-00148.

1.9 **Cash**: Cash, cash equivalents and other readily marketable securities or instruments, certificates of deposit issued by banks or commercial paper, including interest earned or accrued thereon.

1.10 **Class**: A group of Claims which are substantially similar to each other, as classified pursuant to the Plan.

1.11 **Class 1 Claim, Class 2 Claim, Class 3 Claim, etc.**: The specific Class into which Allowed Claims or Allowed Equity Interests are classified pursuant to the Plan.

1.12 **Collected Cash**: All Cash, and the net cash proceeds realized upon any liquidation of the Debtor's property, including all assets and businesses of the Debtor and recoveries from monetary demands made, or legal actions pursued, by the Debtor.

1.13 **Confirmation Date**: The date upon which the Order is entered by the Court confirming the Plan, after a hearing is conducted pursuant to Section 1129 of the Code.

1.14 **Confirmation Order**: The Order of the Court confirming the Plan.

1.15 **Disputed Claim**: Any claim (i) which is scheduled by the Debtor as disputed, contingent or unliquidated or (ii) proof of which has been filed with the Court and an objection to the allowance thereof, in whole or in part has been or is interposed prior to the final date, if any, provided under the Plan for the filing of such objections (or thereafter pursuant to an Order of the Court) and which objection has not (A) been determined by a Final Order or (B) been settled by the parties under a settlement approved by Final Order of the Court pursuant to Bankruptcy Rule 9019; or (iii) which has not been otherwise allowed by the Court.

1.16 **Distribution(s)**: That Cash or property to be distributed to the holders of Allowed Claims under the Plan. No holder of an Allowed Claim will be entitled to receive a total

–14–

Distribution that exceeds 100% of such holder's Allowed Claim. In determining whether such holder has received payment equal to 100% of such holder's Allowed Claim, the Debtor will take into account any Third Party Payment received by such holder.  Nothing herein will prohibit the payment of interest on an Allowed Claim as authorized hereunder and under the Code.

1.17 **Effective Date**: The date on which the Debtor commences making Distributions to holders of Allowed Administrative Expense Claims and Allowed Priority Claims, which date shall not be later than (30) days after the Confirmation Date.

1.18 **Estate Assets**: All assets and property of the Debtor, as defined in Section 541 of the Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located and of whatever type or nature, existing as of the Confirmation Date.

1.19 **Final Distribution**: The Distribution made on the Final Distribution Date.

1.20 **Final Distribution Date**: The date as soon as practicable after the last to occur of (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Estate Assets have been liquidated and converted to Collected Cash; or (c) the Final Payment has been made under the Plan.

1.21 **Final Payment**: The last payment made under the Plan.

1.22 **General Unsecured Claim**: Any Claim against the Debtor which is not an Administrative Expense Claim, Priority Claim, Secured Claim, Priority Tax Claim, or Subordinated Claim.

1.23 **Initial Distribution**: The first distribution of Estate Assets to Creditors holding Allowed General Unsecured Claims made by Mann pursuant to the Plan.

1.24 **Priority Claim**: A Claim that is entitled to priority under Section 507(a) of the Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.25 **Priority Tax Claim**: A Claim that is entitled to priority under Section 507(a)(8) of the Code.

1.26 **Secured Claim**: (i) Any Claim arising on or before the Petition Date that is secured by a valid lien on the property of the Debtor which is not void or avoidable under any state or federal law, including any provision of the Code, or an Allowed Claim for which the holder asserts a right to setoff under Section 553 of the Code to the extent of the value which is either agreed to by the Mann pursuant to the Plan or, in the absence of an agreement, has been determined in accordance with Sections 506(a) or 1111(b) of the Code to be the interest of the holder of such Allowed Claim in the Debtor's property, or (ii) an Allowed Claim that Mann has agreed to treat as an Allowed Secured Claim pursuant to the Plan. That portion of such Allowed Claim exceeding the value of the security held therefore shall be an Allowed General Unsecured Claim, except as otherwise provided by the Plan.

1.27 **Schedules**: The schedules filed with the Court by the Debtor in accordance with Bankruptcy Rule 1007, as amended or supplemented in accordance with the Code or an order of the Court.

1.28 **Tax Claim**: Any Claim of a domestic federal, state or local governmental unit for unpaid taxes.

1.29 **Tax Liens**: All statutory liens created under state or local law for unpaid state or local taxes, and which secure the obligations of the Debtor for pre-petition or post-petition tangible personal and real property taxes in amounts determined by the Court pursuant to Section 505 of the Code or as agreed to by Mann and the holder of such Claim.

1.30 **United States Trustee**: Has the same meaning ascribed to it in 28 U.S.C. Section 581, et seq. and, as used in the Plan, refers to the Office of the United States Trustee for the District of Maryland.

## ARTICLE II:  CLASSIFICATION OF
## CLAIMS AND EQUITY INTEREST HOLDERS

The holders of all Claims against the Debtor, and of all interests in the Debtor, whether resulting in an Allowed Claim or Equity Interest or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

Class 1 –        Unsecured Priority Claims of the Internal Revenue Service, the District of Columbia, and the State of Delaware.

Class 2 --        General Unsecured Claims.

Class 3 --        Subordinated Claims and Equity Interests

## ARTICLE III:  TREATMENT OF CLAIMS

The obligations of the Debtor to object to, otherwise resolve and pay Claims shall be assumed and satisfied by Mann in accordance with the procedures set forth in the Plan, and shall constitute a full and complete novation of such obligations.

Holders of unclassified Claims are not impaired under the Plan.

Class 1 Claims are impaired under the Plan.

Class 2 Claims are impaired under the Plan.

Class 3 Claims are impaired under the Plan.

3.1 **Allowed Unsecured Priority Claims.** The claims of priority creditors shall be paid in deferred payments over a term of five years, commencing on the date of the Order for Relief. The Debtor shall pay such amounts in equal monthly installments of not less than $500.00, with

a final payment of all amounts remaining due on such claim to be made on or before the sixtieth month after the Order for Relief.  Priority Claims include a priority claim of the Internal Revenue Service, which will include all principal and pre-petition interest on all prepetition tax obligations of the Debtor.  The priority claims include also claims by the District of Columbia for unpaid prepetition taxes as well as any claims by the State of Delaware for unpaid pre-petition taxes..

Class 1 claims are impaired under the Plan.

3.2     **Allowed General Unsecured Claims.** Distributions to the holders of Allowed General Unsecured Claims shall be made as follows:

The Debtor shall make distributions *pro rata* through the term of the Plan from Distributable Cash to holders of Allowed General Unsecured Claims.  Over the five year term of the plan, such payments shall total not less than 10% of the total amount of the allowed unsecured claims.

Class 2 claims are impaired under the Plan.

3.3 **Subordinated Claims and Interests of Equity Holders**. Shareholders of the Debtor will retain no ownership interest in the Debtor under the Plan.

Class 3 claims and interests are impaired.

3.4 **Administrative Expense Claims**. Each holder of an Allowed Administrative Expense Claim (other than Tax Claims) shall be paid by the Debtor the full amount of such Allowed Administrative Expense Claim, in Cash, without interest, on the effective date of the Plan or on the date on which such Allowed Administrative Expense Claim becomes due and payable pursuant to the terms thereof, the agreement upon which such Allowed Administrative Expense Claim is based, or any applicable Order of Court.

–18–

Administrative Expense Claims are unimpaired.

## ARTICLE IV: MANN

4.1 **Operations** Mann will hold and administer all the Estate Assets for the benefit of the Creditors, and for payments of all Allowed Claims in accordance with the provisions of this Plan. Mann will not be supervised by the United States Trustee.

4.2 **Authority**. Mann shall have the power and authority to perform the following acts, in addition to any powers granted by law or conferred on it by any other provision of the Plan; provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power of Mann to act as specifically authorized by any other provision of this Plan and to act in such manner as Mann may deem necessary or appropriate to discharge all obligations assumed by Mann or provided herein and to conserve and protect Estate Assets or to confer on the Creditors the benefits intended to be conferred upon them by this Plan:

(a) Perfect and secure the Debtor's right, title and interest to the properties comprising the Estate Assets.

(b) Recover, and, to the extent possible, sell and convert the Estate Assets to cash, free and clear of liens, with liens to attach to the proceeds, and distribute the net proceeds as described herein.

(c) Manage and protect the Estate Assets and distribute the net proceeds as described herein.

(d) Grant options to purchase, or contracts to sell, the Estate Assets or any part or parts thereof where such purchase price is for cash and on such terms as the Court shall approve.

(e) Release, abandon, convey, or assign any right, title or interest in the Estate Assets.

(f) Purchase insurance, including "tail" coverage, to protect Mann, and its officers and directors, and the Estate Assets from liability, and maintain a fidelity bond in an amount approved by the Court.

(g) Deposit estate funds, draw checks and make disbursements thereof.

(h) Employ and retain, and discharge and dismiss, appraisers, financial advisors, attorneys, accountants, auctioneers, agents and such other professionals as Mann may deem necessary or appropriate to assist in fulfilling the purposes of the Plan, including payment to their professionals in connection with any ongoing litigation being pursued or conducted by the Debtor, and to pay reasonable charges, commissions and compensation to all of the foregoing, subject to review and approval by the Court.

(i) Perform the obligations of the Debtor or the Trustee pursuant to any Post-Petition settlement agreement to which the Debtor or the Trustee was a party on the Effective Date of the Plan, and which has been approved by Order of the Court;

(j) Exercise any and all powers granted to the Debtor by any agreements, by common law or any statute which serves to increase the extent of the powers granted to the Debtor hereunder.

(k) Take such other action as Mann may determine to be necessary or desirable to carry out the purpose of this Plan.

(l) Commence or prosecute, for their own account, any lawsuit or other legal or equitable action, including filing objections to Claims, and seeking recovery of Overpayments, in any court of competent jurisdiction which are necessary to carry out the terms and conditions of the Plan.

(m) Settle, compromise, or adjust, pursuant to the standards of Bankruptcy Rule 9019 (which shall be deemed to apply to all Post-Confirmation settlements), any disputes or controversies in favor of, or against, the Debtor, to the extent provided in the Plan and, subject to review and approval by the Court.

(n) Appoint, remove and act through agents, managers and employees and confer upon them such power and authority as may be necessary or advisable.

(o) Have instituted all claims and causes of action which can be brought by a trustee or the Debtor under the Code, including, without limitation, actions to recover voidable transfers, and prosecute or defend all appeals on behalf of the Debtor.

(p) Prepare and file tax returns, as mandated by applicable state and federal law.

(q) In general, without in any manner limiting any of the foregoing, deal with the Estate Assets or any part or parts thereof in all other ways as would be lawful for any person owning the same to deal therewith, whether similar to, or different from, the ways above specified at any time or times hereafter.

4.3 **Operations of the  Debtor by Mann**.

(a) Mann shall conduct itself in accordance with applicable Federal and State Law, subject to the modifications set forth in this Plan. The articles and by-laws of the Debtor will be

amended Post-Confirmation, to the extent necessary, so as to be consistent in all respects with this Plan.

(b) In carrying out its obligations as debtor-in-possession, Mann intends to assert any claims available to it in this Chapter 11 case.

(c) In no case shall any party dealing with Mann in any manner whatsoever in relation to the Estate Assets or to any part or parts thereof, be obligated to see that the provisions of the Plan or any direction from the Court have been complied with, or be obligated or privileged to inquire into the authority of Mann to act, or to inquire into any other limitation or restriction of the power and authority of Mann, but as to any party dealing with Mann in any manner whatsoever in relation to the Estate Assets, the power of Mann to act or otherwise deal with the Estate Assets shall be absolute.

(d) Mann shall be responsible for making distributions to holders of Allowed Claims from the funds held in the Collected Cash Account pursuant the Plan.

(e) Mann shall keep an accounting of receipts and disbursements, which shall be open to inspection and review by the Court.  Mann shall file with the Court quarterly reports as required by law.

(f) All costs, expenses and obligations incurred by Mann in administering and maintaining the Estate Assets or in any manner connected, incidental or related thereto, including but not limited to the fees and expenses of professionals retained by Mann to assist in carrying out its duties pursuant to the Plan, post-confirmation U.S. Trustee fees, and fees and expenses of Mann and its professionals in pursuing ongoing litigation, shall be a charge against the Estate Assets, and Mann shall pay same, maintaining at all times adequate reserves for such payments prior to making distributions to the Creditors.

–22–

(g) No recourse shall ever be had, directly or indirectly, against Mann, its directors, employees or professionals, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by Mann under the Plan or by reason of the creation of any indebtedness by Mann under this Plan for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants, and agreements of Mann shall be enforceable only against, and be satisfied only out of, the Estate Assets, or such part thereof as shall, under the terms of any such agreement, be liable therefor or shall be evidence only of a right of payment out of the income, proceeds and avails of the Estate Assets, as the case may be; every undertaking, contract, covenant or agreement entered into in writing by Mann shall provide expressly against the personal liability of Mann.

(h) Mann's counsel, and any other professionals retained by Mann or other parties in interest shall submit statement(s) for services rendered to and costs incurred by, Mann for review and approval.  The Court shall retain jurisdiction to adjudicate any disputes over such amounts. In the event that no objection is raised to the aforementioned respective statements within ten (10) days after presentation to Mann, any such statements shall be due and payable by Mann.

(i) Mann shall be empowered to (i) make all Distributions required to be made by it pursuant to the Plan; (ii) prosecute any and all litigation; (iii) commence the filing, and/or continue the prosecution, of all objections to Claims and Equity Interests on or before the date fixed by the Confirmation Order or under applicable law; and (iv) otherwise act in accordance with the Plan and the Confirmation Order.

4.4 **Collected Cash Account.** Mann shall deposit all cash proceeds received from liquidation of the Estate Assets, into debtor-in-possession accounts created for such purpose. The cash in such accounts may be invested by Mann in a manner consistent with the investment restrictions contained in Section 345 of the Code, or as otherwise authorized hereunder.

4.5 **Timing of Distribution Under the Plan.** Payments and distributions in respect of Allowed Claims under the Plan shall be made as mandated under the Plan.

4.6 **Manner of Payments.** Any payments to be made by Mann pursuant to the Plan shall be made by checks drawn on accounts maintained by Mann or its professionals (or by wire transfer if circumstances justify) at the option of Mann.

4.7 **Requirement of Undertaking.** Mann may request any court to require, and any court may in its discretion require, in any suit for the enforcement of any right or remedy under the Plan, or in any suit against Mann for any action taken or omitted by Mann, that the filing party litigant in such suit undertake to pay the costs of such suit, and such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant.

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

5.1 **Preservation of Assets, Preservation of Avoidance Claims and Other Claims**.

(a) All right, title and interest in the Estate Assets shall remain with the Debtor.

(b) All Claims against the Debtor shall continue to be claims against the Debtor, and shall be classified and treated pursuant to the Plan.

5.2 **Liquidation of Other Assets**. Where appropriate, Mann shall liquidate all Estate Assets as quickly as practicable in a commercially reasonable manner and reduce them to Cash, provided that if Mann, in his discretion, determines that an asset is burdensome or of inconsequential value, said asset may be abandoned after written notice to the Court.

5.3 **Prosecution of Claims Against Third Parties**. Mann has filed, or intends to file, adversary complaints to pursue fraudulent conveyances, preferential transfers and other causes of action against Creditors of the Debtor, and against other third parties. All funds recovered through these actions shall be included in the Collected Cash available for distribution. Notwithstanding the foregoing, to the extent that the conveyance or assignment of any such claims would preclude or impair the prosecution thereof by Mann, then Mann is intended to be, and shall be deemed to be, a "representative of the estate" approved to retain and enforce such claims as contemplated by 11 U.S.C.§§ 1123(b)(3)(A) and (3)(B).

## ARTICLE VI: VESTING OF ESTATE ASSETS

6.1 **Vesting of Property**. The Debtor shall continue to hold title to the Estate Assets, free and clear of all liens, Claims, encumbrances and Equity Interests, except as specifically provided in this Plan.

6.2 **Conditions Precedent.**  It shall be a condition precedent to the obligations of the parties under the Plan that each of the following shall have occurred:

(a) A Confirmation Order shall have been entered:

(i) expressly approving the terms and provisions of the Plan under Section 1129 of the Code;

(ii) providing for the rejection on the Effective Date of all executory contracts and leases not included in the Estate Assets and otherwise specifically assumed prior to the Confirmation Date;

(iii) providing that all sales and transfers of the Estate Assets, contemplated by, or provided for, in the Plan shall be free and clear of all transfer and stamp taxes in accordance with section 1146(c) of the Code;

(iv) providing for the treatment of the Liens and Claims of holders of Allowed Secured Claims and Liens;

(v) authorizing and directing Mann to perform its obligations under the Plan, and to take all actions and execute all documents and instruments reasonably necessary to consummate the transactions contemplated thereby in accordance with the terms thereof;

(vi) providing that, upon the Effective Date, Mann shall be vested with the rights and powers granted to the Trustee under section 1107(a) of the Code with respect to the allowance, treatment or avoidance of Liens or Claims to be assumed by the Debtor as part of the Assumed Liabilities, and which remain unresolved as of the Effective Date;

(vii) providing that the entry of the Confirmation Order shall not have any res judicata or other preclusive effect with respect to any claims of the Trustee or Debtor against third parties that are not specifically and expressly released by the terms of the Plan or Confirmation Order, and that the entry of the Confirmation Order shall not be deemed a bar to asserting such claims.

6.3 **Further Authorization**. Mann shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary to carry out and further the intentions and purposes, and to give full effect to the provisions of the Plan.

## ARTICLE VII: RETENTION OF JURISDICTION

7.1 The Court shall retain Post-Confirmation jurisdiction over these proceedings for the following purposes:

(a) To hear and determine any disputes arising under the Plan, including disputes which arise between Mann and other parties.

(b) To adjudicate and confirm any and all issues relating to corporate governance of the Debtor.

(c) To adjudicate all claims or controversies arising out of any purchases, sales, contracts or undertakings by Mann during the pendency of these proceedings.

(d) To adjudicate any and all claims filed by any Creditor or other parties in interest against the Debtor or Mann or their professionals, raised in connection with any and all claims or causes of action arising from or related to this Case or this Plan.

(e) To adjudicate all controversies and issues arising out of or relating to the various adversary proceedings discussed in the Plan, which remain open on the Court's docket as of the Confirmation, or which are commenced by Mann after Confirmation pursuant to the provisions of the Code and this Plan.

(f) To recover all assets and properties of the Debtor, whether title is presently held in the name of the Debtor or a third party.

(g) To make such Orders as are necessary or appropriate to carry out the provisions of the Plan.

(h) To make such other Orders or give such directions as may be appropriate under Section 1142 of the Code.

(i) To adjudicate all Claim objections by parties in interest in the Case.

(j) To make all such Orders as are necessary or appropriate to carry out the provisions of the Plan.

(k) To sell the Estate Assets pursuant to Section 363 of the Code.

(l) To adjudicate any other matters or controversies raised by Mann over which jurisdiction may be properly exercised.

### **ARTICLE VIII: EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

8.1 **Executory Agreements Rejected**. All executory contracts or unexpired leases not assumed, assumed and assigned or rejected by the Debtor on or before the Confirmation Date (or

as to which no motion to assume or assume and assign is pending) shall be deemed to be rejected upon the Confirmation Date. Nothing herein is intended to have, or shall have, any effect on the obligations of any party in connection with any settlement that has been approved by the Bankruptcy Court during the administration of the Case.

### ARTICLE IX:  ACCEPTANCE OR REJECTION
### OF THE PLAN; EFFECT OF REJECTION
### BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

9.1 **Each Impaired Class Entitled to Vote Separately**. Each Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan. Each Creditor in an Impaired Class shall receive a Ballot which will be used to cast their votes in respect to the Plan.

9.2 **Acceptance by a Class of Creditors**. A Class of Claims shall have accepted the Plan if the Plan is accepted by Creditors that hold at least two-thirds (2/3) in amount and more than one-half (½) in the number of Allowed Claims of such Class that has voted to accept or reject the Plan.

9.3 **1129(b) Issues**. If any Class of Claims entitled to vote fails to accept the Plan by the requisite majorities in number and amount required by section 1126 of the Bankruptcy Code, the provisions of section 1129(b) of the Bankruptcy Code may be invoked at the request of Mann at the Confirmation Hearing, and such request may be made orally.

### ARTICLE X:  MISCELLANEOUS PROVISIONS

10.1 **Binding Effect of the Plan**. The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor's estate and Mann and their respective predecessors, successors, assigns, agents, officers and directors.

10.2 **Amendments/Modification of Plan.** Mann may propose amendments or modifications of the Plan any time prior to Confirmation, with leave of the Court upon notice to appropriate parties. After Confirmation, Mann may, with approval of the Court, and so long as it does not materially or adversely affect the interests of Creditors, amend the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

10.3 **Discharge.** Entry of an Order confirming the Plan acts as a discharge of any and all liabilities of the Debtor that are dischargeable under Section 1141 of the Code, other than the debts or obligations which are expressly created in the Plan.

10.4 **Class Voting**. Each impaired Class of Creditors with a claim against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. Each vote shall be set forth on a Ballot, as mandated by the Code, which each voting entity and Creditor shall return to the balloting agent. If sufficient acceptances are not received, Mann reserves the right to proceed to "cram-down" the Plan pursuant to Section 1129(b) of the Code.

10.5 **Governing Law.** Except as mandated by the Code or Rules as applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the District of Columbia.

10.6 **Headings**. The headings of articles, paragraphs, subparagraphs of the Plan are inserted for convenience only and shall not affect the interpretation of any provision of the Plan.

10.7 **Successors and Assigns**. The Plan and all provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

10.8 **Severability.** Should any provision of the Plan be determined to be unenforceable after the Effective Date such determination shall in no way limit or affect the enforceability and operative effect of any and all of the other provisions of the Plan.

10.9 **Revocation.** Mann reserves the right to revoke and withdraw the Plan prior to Confirmation. If Mann revokes or withdraws the Plan, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, or any other person or entity or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

10.10 **Plan Controls**. In the event, and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement or instrument required or contemplated to be executed by Mann or any other entity pursuant to the Plan, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between any provision of any of the foregoing documents and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

10.11 **Post-Confirmation U.S. Trustee Fees**. Notwithstanding any other provisions of the Plan to the contrary, Mann shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §§1930(a)(6), within ten (10) days of the entry of the Order confirming this Plan, for pre-confirmation periods and simultaneously

31

provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period. Mann shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §§1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. §§ 1930(a)(6), based upon all post-confirmation disbursements made by the Debtor, until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon the entry of an Order by the Court dismissing this Case or converting this Case to another chapter under the Code, and Mann shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

   This Chapter 11 Plan is dated this __ day of _____, 2009.



       John B. Mann


       _____.
       By: John B. Mann



_____.
Augustus T. Curtis (Fed No. 26653)
926 St. Paul Street
Baltimore, Maryland 21202

COUNSEL FOR JOHN B. MANN

## EXHIBIT I: LIQUIDATION ANALYSIS

Mann estimates that liquidation of its assets would yield the following amounts. Such amounts are not adjusted for payments which would necessarily be made to any auctioneers, appraisers, or other individuals or entities employed for purposes of effecting sale of the assets.

The Debtor's only assets of any value are twenty four patents which are held in two subsidiaries, ESBH, Inc. a subsidiary of MCHI and Virtual Geosatellite, LLC. While these patents have potential future value, if maintained and marketed, they have no current significant value. Mann estimates that an immediate sale of these patents would yield no more than ten thousand dollars ($10,000.00).

The Debtor's remaining assets (a cell phone and a used lap top) have no value.

Thus, while liquidation could yield recovery of a portion of the administrative expenses, and perhaps a portion of the priority claims of the Internal Revenue Service, it would leave no possibility for recovery of the priority claims of the District of Columbia or the State of Delaware, or the claims of any unsecured creditors in the case. Conversely, under the Plan, Mann's efforts will yield full payment for the Class I Priority Claims of the Service, the District and Delaware through the following payments:

(A)     Deferred payments on Clalss I, Priority Claims of Internal Revenue Service, the District of Columbia and the State of Delaware of $500.00 monthly. Final payment at conclusion of Plan.

(B)     Deferred Payments on Class II general unsecured claims in amounts equal to no less than ten percent of allowed claims. Final payment at conclusion of plan.