UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re:                                      )
                                             )    Case No. 09-00148
    ELLIPSO, INC.,                      )    (Chapter 11)
                                             )
        Debtor.                         )
_____)

**DEBTOR'S OBJECTION TO**
**JOHN MANN'S DISCLOSURE STATEMENT**

    The Debtor, ELLIPSO, INC., by and through counsel, objects as follows to the disclosure statement filed by John Mann (DE 244) in connection with his proposed plan of reorganization (DE 243).

    Under § 1125 of the Code, the proponent of a plan of reorganization must provide creditors and other parties in interest with "adequate information," which is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records…that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.]"[1] Although there are no hard-and-fast rules about the specific information that must be provided in a given case, the proponent must generally provide information about the directors and officers of the reorganized debtor, information about how the reorganized debtor will carry on its business, other information

---

1. 11 U.S.C. § 1125(a)(1).

relevant to the success or failure of the plan's proposals, and information about the value that can be expected to be obtained from avoidable transfers and other claims.[2]

As is explained in more detail below, Mann's disclosure statement falls far short of what the Code requires.

### A. Mann's disclosure statement misstates a key provision of his proposed plan.

Mann's proposed plan calls for the Debtor to be sold to an unidentified new entity ("the Acquisition Company")in exchange for $200,000 in cash and the issuance of warrants that would allow creditors to receive stock in the Acquisition Company. The Acquisition Company would be entitled to redeem those warrants within a year after the Effective Date for "for a maximum of $800,00.00."[3] This redemption price is obviously a key provision, because it sets an upper limit on what unsecured creditors would receive if the warrants were to be redeemed.

Mann's disclosure statement misstates the proposed plan's redemption-price provision. Rather than describing the price as "a maximum of $800,000.00," as the proposed plan does, the disclosure statement describes the price as "not less than $800,00.00."[4] Thus, the disclosure statement says exactly the opposite of what the proposed plan says.

---

2. *See, e.g.*, *In re Radco Properties, Inc.*, 402 B.R. 666, 682–83 (Bankr. E.D.N.C. 2009); *In re United States Brass Corp.*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996); Richard F. Broude, *Reorganizations Under Chapter 11* § 11.01.

3. Mann Proposed Plan at 8.

4. Mann Discl. Stmt. at 9; *see also id.* at 13 ("a minimum of $800,000.00").

2

**B. Mann's disclosure statement provides little or no information about the Acquisition Company, the warrants, the Acquisition Company's business plans, and the financial prospects of the reorganized Debtor.**

Most if not all of the potential value that Mann's proposed plan would offer to unsecured creditors lies in the warrants that unsecured creditors would receive that would entitle them to stock in the Acquisition Company. Thus, Mann's proposed plan is in effect a securities offering. One would therefore expect Mann's disclosure statement to provide information similar in kind (though not necessarily in detail) to what would be included in a stock prospectus or a private placement memo. But far from providing that level of information, Mann's disclosure statement little if any material information.

To begin with, the disclosure statement fails to provide even the most basic corporate information about the Acquisition Company:

- Who are its shareholders, directors, and officers?

- What is its capitalization?

- What are its assets and liabilities?

- Have there been any material transactions between the Acquisition Company and any of its shareholders, directors, and officers? If so, what are their terms?

- What compensation will be paid to the Acquisition Company's directors and officers?

- How many shares of stock in the Acquisition Company have been authorized? Of that number, how many shares have been issued (not counting treasury shares)? How many shares are held by the company itself.

- Does the Acquisition Company have more than one class of stock? If so, what rights are associated with each class?

- Has the Acquisition Company already issued any warrants or similar rights to acquire stock in the company? If so, what are the details of those

   warrants or rights. If not, does in currently anticipate issuing such warrants or rights to anyone other than the unsecured creditors in this case?

- Has the Acquisition Company entered into any material contracts? If so, what are the details of those contracts?

The disclosure statement similarly fails to provide essential information about the warrants that would be issued to the unsecured creditors:

- How many warrants would be issued in total to the unsecured creditors?

- How many shares would each warrant entitle its holder to receive?

- What terms and conditions would govern the warrant-holders' exercise of the warrants?

- What terms and conditions would govern the Acquisition Company's right to redeem the warrants?

The disclosure statement says next to nothing about the anticipated business and operations of the reorganized Debtor and the Acquisition Company:

- What are each company's projected revenues and expenses?

- How does the Acquisition Company plan to derive economic benefit from the patents held by the Debtor's direct and indirect subsidiaries?

- What is the anticipated time frame for those patents to start generating revenue?

- How much revenue is expected, and over what period of time is that revenue expected to be spread over?

- What costs are anticipated?

- How will the operations of the Acquisition Company and the reorganized debtor be financed?

- What are the business risks?

- Given that the warrants are for stock in the Acquisition Company (not in the Debtor) and that the only valuable assets belong to the Debtor's direct and indirect subsidiaries (not to the Debtor itself), by what mechanism would unsecured creditors actually be able to receive money on account of the warrants issued to them, assuming that the warrants are not redeemed?

4

Finally, while the disclosure statement refers to litigation against the Debtor's current president, David Castiel, as a potential source of revenue, it fails to provide enough information for creditors to estimate the economic value of those claims:

- What are the factual bases for the claims against Castiel?
- What defenses might Castiel assert?
- What amount could Ellipso reasonably expect to obtain a judgment for?
- What are the likely attorney's fees and other expenses?
- How long would litigation against Castiel be likely to take?
- To what extent would a judgment against Castiel be collectible?

Because Mann's disclosure statement leaves all these questions unanswered, it does not remotely provide the "adequate information" required by § 1125.

**C. Mann's disclosure statement contains significant factual errors regarding the claims against the estate.**

Mann's disclosure statement substantially misstates the amount of the administrative claims and unsecured claims against the estate.

First, it understates the likely anticipated expenses by a factor of ten: While the disclosure statement estimates that the debtor's attorney's fees will be approximately $15,000, those expenses are likely to be in the range of $150,000. Consequently, it fails to state that, after payment of administrative expenses and allowed priority unsecured wage claims, and (assuming that the debtor's objection to the sole prepetition tax claim is sustained), there will be a maximum of $6,200 of the proposed $200,000 capital investment to distribute to unsecured creditors. Such a *de minimus* distribution does not satisfy the requirement of § 1129(a)(7)(A)(ii).

5

Second, the disclosure statement says that the claims against the estate are estimated to total $6,500,000.[5] It is unclear why the disclosure statement provides an estimated figure rather than providing the actual claim amount, which is available from the claims register. And the actual amount is currently much higher than Mann's estimate. The total amount of (a) claims scheduled by the Debtor as undisputed and (b) claims asserted in timely proofs of claim is $25,344,042.17. The Debtor has so far filed objections to six proofs of claim, which total $17,066,246.99. If the Debtor prevails on all of these objections, the unsecured nonpriority claims against the estate would be reduced to $8,277,795.18, which is still substantially higher than Mann's estimate.

## Conclusion

The deficiencies set out above represent only the most serious problems with Mann's disclosure statement. But these flaws alone compel the conclusion that the disclosure statement does not provide the "adequate information" required by § 1125. As a result, Mann's disclosure statement should not be approved.

Respectfully submitted,

  /s/ Kermit A. Rosenberg
Kermit A. Rosenberg (D.C. Bar # 219089)
Neal Goldfarb (D.C. Bar # 337881)
Butzel Long Tighe Patton, PLLC
1747 Pennsylvania Avenue, Suite 300
Washington, D.C. 20006-4604
Telephone: (202) 454-2800
Facsimile: (202) 454-2805

*Attorneys for Debtor*

---

5. Mann Discl. Stmt. at 8.

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on September 21, 2009, true copies of the foregoing Debtor's Objection to John Mann's Disclosure Statement were served electronically using the Court's Electronic Case Filing System and upon the Debtor, the United States Trustee, and all creditors and parties in interest entitled to receive such notice, and upon the following by first class mail, postage prepaid:

    John Mann
    9330 Harts Mill Rd.
    Warrenton, VA 20186

    Martha L. Davis, Esquire
    Office of the United States Trustee
    115 S. Union Street, Room 210
    Alexandria, VA 22314

      /s/ Kermit A. Rosenberg
     Kermit A. Rosenberg