UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
OCT 09 2009
Clerk, U.S. District and
Bankruptcy Courts

In re: Case No. 09-00148
ELLIPSO, INC., (Chapter 11)(Debtor.)

OBJECTION TO DEBTOR'S SECOND AMENDED DISCLOSURE
STATEMENT AND PLAN
FILED BY CREDITOR ROBERT PATTERSON

COMES NOW, CREDITOR ROBERT PATTERSON and files this Objection to Debtor's Second Amended Disclosure Statement and Plan of Reorganization filed October 5, 2009, (Docket Entry No. 287).

1. DEBTOR HAS SHOWN NO AUTHORIZATION TO PRESENT THIS PLAN OF REORGANIZATION. Although purporting to be the Debtor's Plan, no authorization for the submission of such plan by Debtor's Board of Directors has been filed. Considering the presentation of a superior offer prior to the submission the this "Debtor's" Plan, it would seem that sound business practices, as well as established corporate governance requirements, would necessitate presentation of this higher offer to the Board of Directors. Debtor's explanation of these events is that the exclusivity period was near its end and "Debtor did not have adequate time ... with respect to this offer ... before the exclusivity period expired." (Second Amended Disclosure Statement, p .28, n. 21). Apparently, the Board of Directors was never informed of the superior offer, nor was any authorization from the Board of Directors obtained for presentation of this "Debtor's" plan. This appears to be the "Poster Boy" example of a controlling

1

shareholder attempting to circumvent his own Board of Directors to "feather his own nest."

As part of the confirmation process, a debtor must demonstrate that the new value plan has not been proposed by any means forbidden by law, 11 U.S.C. § 1129(a)(3). Failing to obtain the authorization of the Board of Directors for the sale of the company; while concealing a competing and superior offer from the Board of Directors, would clearly run afoul of a host of statutory and common law proscriptions. This, of course, gives rise to new causes of action and claims by the Creditors.

> The concept of fairness has two basic aspects; fair dealing and fair price. The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. Weinberger v. UOP, Inc. 457 A.2d 701, 715 (Del. 1983).

The Second Amended Disclosure Statement and Plan does not meet the statutory requirements of Section 1129(a)(3), and must be disallowed.

This is an INSIDER PLAN. With an insider plan, the insider must demonstrate that it meets the ENTIRE FAIRNESS STANDARD articulated by the Supreme Court in, *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership, 526 U.S. 434 (1999)*. This standard is particularly applicable to the confirmation of a chapter 11 plan that involves a transaction between the debtor and its controlling shareholder, *See, In re Coram Healthcare Corp. 271 B.R. 228, 239 (Bankr. D.Del. 2001); In re Zenith Electronics Corp. 241 B.R. 92, 108 (Bankr. D.Del. 1999)*. One tenant of that standard is that all relevant information possessed by the insider be disclosed. This will permit the Court to determine whether the old equity holder is acquiring the equity of the reorganized debtor "on account of" its new value contribution,

or, on the other hand, "on account of" its old equity position and control of the debtor's reorganization process. *See, 203 N. LaSalle, 526 U.S. at 451.* Where, as here, Debtor received a higher competing bid prior to advancing its "new value" plan; concealed the existence of that offer from the Board of Directors; failed to obtain the authorization of the Board of Directors to submit this insider plan; and has refused to provide requisite information about Debtors business to the Creditors; it seems that meeting this "entire fairness" burden would be all but impossible.

2. Debtor's Second Amended Disclosure Statement suffers from the same deficiencies as the Debtor's two previous submissions – IT PROVIDES INSUFFICIENT INFORMATION OF DEBTOR'S OPERATIONS, ASSETS, AND FINANCIAL CONDITION TO PERMIT ANY MEANINGFUL EVALUATION OF THE PROPOSED PLAN OF REORGANIZATION. This Creditor has spent the past eight months attempting to obtain information concerning Debtor's operations, assets, and financial condition; only to be "stone walled" by Debtor's counsel, who has made good on his threat made at the Section 341 Hearing that, "You, Mr. Patterson, will never see a single document from this Debtor." The Amended Disclosure Statement continues this bad faith pattern of concealment of all information pertaining to this Debtor.

Only last week, pursuant to this Court's Order compelling production of documents, did this Creditor receive any documents pertaining to Debtor's operations or financial condition. Attached is correspondence which this Creditor has sent to Debtor's counsel noting the deficiencies in the documents produced. From this document it is clear that less than twenty percent (<20%) of the Ordered documents have been produced. Other Creditors have likewise been refused access to any information concerning Debtor's

situation. ABSENT INFORMATION, NO EVALUATION OF DEBTOR'S **INSIDER PLAN** IS POSSIBLE.

Considering this Court's Order of October 6, 2009, any consideration of Debtor's Second Amended Disclosure Statement and Plan, must be delayed until after Debtor provides sufficient information to permit analysis of its proposal. Considering the lack of good faith which Debtor has shown so far in this proceeding, the Creditors must be afforded a reasonable opportunity to review and evaluate any additional information which Debtor might offer, before being required to act on Debtor's submission. Given what appears to be the total disarray of Debtor's affairs, sufficient time must be allowed for a through review, and perhaps even reconstruction, of Debtor's financial records.

3. THE DEBTOR'S PLAN IS SIMPLY A DEVICE TO ENABLE DAVID CASTIEL TO GAIN EXCLUSIVE OWNERSHIP OF DEBTOR WHILE PAYING THE CREDITORS NOTHING. Conspicuously missing from Debtor's (Castiel's) Disclosure Statement is any indication of the compensation that David Castiel would pay himself. (David Castiel has asserted that his pre-petition salary was thirty-five thousand dollars ($35,000.00) a month, with an additional bonus due each month of twice that amount.) The Bankruptcy Code provides that no plan of reorganization can be confirmed unless, "the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider." 11 U.S.C. § 1129(5)(B). The Plan permits any and all funds, which it purports to pay to the Creditors, to be paid to Castiel (or his counsel), with no assurance that any moneys would ever be paid to the Creditors.

4. THE ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00) SET ASIDE FOR POST CONFIRMATION PROFESSIONAL FEES AND EXPENSES, APPEARS WOEFULLY INADEQUATE. Half of these funds, seventy five thousand dollars ($75,000.00) are allocated for the Plan Administrator, with no assurance that this amount will be sufficient. Recently, this Court lifted the automatic stay to permit the appeals from, *Ellipso, Inc. v. John B. Mann, et al., No. 05-01186, United States District Court for the District of Columbia*, to proceed. Almost forty years of litigation including almost four hundred appellate cases (including more than 300 United States Supreme Court cases) leads me to estimate that the appeal of *Ellipso, Inc. v. John B. Mann, et al.*, will consume the remaining seventy five thousand dollars ($75,000.00), leaving nothing for the other post confirmation proceedings. Such expenses must be paid from the funds which the Debtor's Plan disingenuously represents will be available to pay the Creditors. The Debtor's Insider Plan permits the insider, David Castiel, and his counsel to simply litigate with the Creditors, while at the same time paying himself, until no moneys remain.

5. THE DISCLOSURE STATEMENT FAILS TO SPECIFY THE PROCEDURES FOR SUBMITTING COMPETING BIDS, stating that such procedures will be filed "at or ... after the ...Confirmation of the Plan." (Disclosure Statement, p.1, n. 2). The Creditors are being asked to vote on a hidden procedure. This is a continuation of Debtor's bad faith attempt to swindle the Creditors by refusing to disclose relevant, pertinent, necessary, basic information, which is necessary for any evaluation of the Debtor's Insider Plan.

5

WHEREFORE, Creditor Robert Patterson moves this Honorable Court to DENY APPROVAL of Debtor's Second Amended Disclosure Statement and Plan of Reorganization.

Respectfully submitted,

Robert Patterson, Creditor, *pro se*
9330 Harts Mill Road
Warrenton, Virginia 20186
(202) 412-2404

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2009, true copies of the foregoing were served upon the following by first class mail, postage prepaid:

Martha L. Davis, Esquire
Office of the United States Trustee
115 S. Union Street, Room 210
Alexandria, VA 22314

Kermit A. Rosenberg, Esquire
Butzel, Long, Tighe, Patton, PLLC
1747 Pennsylvania Avenue, N.W., Third Floor
Washington, D.C. 20006-4604

Robert Patterson, Creditor, *pro se*

October 8, 2009

Neal Goldfarb, Esquire
Kermit A. Rosenberg, Esquire
Butzel, Long, Tighe, Patton, PLLC
1747 Pennsylvania Avenue, N.W., Third Floor
Washington, D.C. 20006-4604

                Re: Response to Document Request

Dear Mr. Goldfarb:

    I now have reviewed the documents that you produced in compliance with the Orders of the Bankruptcy Court in response to my Document Request.

    Enclosed is an analysis of what was provided and what is still missing. Please let me know when the missing documents will be produced.

                              Very truly yours,


                              Robert B. Patterson
                              (202) 412 2404

Deficiencies in documents provided to Date:

1. Ellipso Financial Statements – The FS produced are all unaudited. Where signed by the accountant, the report is a compilation only. None of the statements have the accountants' compilation notes, although they are referenced in the comilation report.
2. Ellipso subs FS – Same comment as 1.
3. Ellipso Corporate Tax returns – Only the 2005 Fed Tax return is signed. Were all provided tax returns filed?
4. Subs tax returns–Same as 3.
5. Ellipso bank and brokerage accounts – Ellipso's SunTrust account #100001958602 is wholly absent. Ellipso's UBS account WS31501 for months prior to Sept. 2004 are missing.
6. Subsidiaries accounts – MCHI UBS Account #WS 47698 PM is MISSING. MCHI UBS Account #WS 47740 PM is MISSING.
7. Details of Source and Destination of each transfer of stock and funds - NONE PROVIDED.
8. Account Statements of each account into which funds were transferred for which David Castiel has signatory authority. – NONE PROVIDED.
9. David Castiel expense accounts and receipts. – NONE PROVIDED.
10. Ellipso Board Minutes, etc. – Only 7 Board Minutes in 2003-2009? These look like they are maintained in electronic format. Please provide them in original electronic version in .doc word format.
11. Subsidiary minutes/documents of board activities – Only 6 Manager's minutes from 2000-2009? Some are unsigned. Please provide original electronic version in .doc word format.
12. Documents pertaining to unsecured creditors – NONE PROVIDED
13. All Contracts – NONE PROVIDED
14. All patents –
15. All patent assignments –
16. Documents pertaining to David Castiel's compensation from 1999-present – NONE PROVIDED.
17. Transactions transferring assets from Ellipso 2003-present – NONE PROVIDED
18. Transactions transferring assets from subs 2003-present – NONE PROVIDED
19. Transaction between David Castiel and Ellipso/subs – NONE PROVIDED
20. Communications with Accountants – NONE PROVIDED, including compilation reports referenced but not provided.

1

2

21. <u>Payments to Tighe-Patton</u> – NONE PROVIDED

22. DIP account –

2