**FILED**
**DEC 04 2009**
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES BANKRUPTCY COURT
FOR
THE DISTRICT OF COLUMBIA

IN RE: ELLIPSO, INC.                      NO. 09-00148
CHAPTER 11
FILED: FEBRUARY 25, 2009

---

### MOTION IN SUPPORT OF CREDITOR ROBERT PATTERSON
### TO HOLD DEBTOR
### and THE LAW FIRM OF BUTZEL, LONG, TIGHE, PATTON, PLLC
### IN CONTEMPT OF COURT FOR FAILURE TO COMPLY WITH
### THIS COURT'S ORDERS REQUIRING PRODUCTION OF DOCUMENTS

NOW COMES CREDITOR, JOHN PAGE, ("PAGE"), and moves for immediate disclosure of all documents for which this court has granted discovery against Debtor.

1. <u>Creditor Need</u>. This creditor has been asking for and awaiting this information since July as key to a) evaluating possible plans and voting on them and b) to determine the validity of claims against Debtor and its estate. My direct discovery against Debtor would have been duplicative of Patterson's efforts and I therefore support his motion that I may also gain access to this vital information.

2. <u>Lawful Requirement</u>. Debtor owes a fiduciary duty to the bankruptcy estate in Chapter 11 Debtor In Possession cases[1]. In this court of equity, a creditor's committee appointed under section 1102 of the code would have had rights of inspection and access to all company information like a Board of Directors. I do not believe it was intended by Congress or the Senate, in the absence of a creditor's committee, that Debtor be allowed to deliberately conceal this information, essential for the solicitation of offers and plan evaluators whoever the plan proponent might be. In the absence of a creditor's committee to channel

---

[1] *re Brook Valley VII, Joint Venture (Lange v.Schropp)*, 496 F.3d 892 (8th Cir. 2007).

information in the manner defined in 1102(b)(3) this must be the direct responsibility of the Debtor receiving relief under the code. I have made numerous requests direct to Debtor for access to essential information but Debtor has not performed, its plan activities were an insider CEO shut-out, not a solicitation. To prove this I make two references, a) the first the second paragraph on page three of my Opposition to Extension of Exclusivity submitted to this court August 19, 2009 which shows Debtor's misrepresentation in its first plan that no better offer existed and b) the email string at Exhibit A showing that on July 9, 2009 I continued to seek useful information to assist the bankruptcy estate and on July 10, 2009 I politely asked for access to information so I might explore non-auction alternatives that could bring over $1 million to the Debtor. The response merely asked me to turn over all information I had to the Debtor which, given the Debtor's prior bad faith in refusing to submit my higher all-cash offer with its plan (details as in my Opposition to Extension of Exclusivity), I declined to do. In summary, a Debtor has a duty release information to the benefit of the bankruptcy estate but in this case does the opposite by concealing "all information".

3. <u>Debtor Behavior.</u> While I am a layman in the art of bankruptcy the court's intent is clear and Debtor's behavior, orchestrated by and through its Counsel, demonstrates concealment in deliberate frustration of the rule 2004 discovery. Instead, Debtor's Counsel <u>boasts</u> of spending money on this in the second paragraph of page three of its "First Interim Application for Approval of Compensation by Counsel for Debtor" dated December 1, 2009! As another example, Debtor's Second Amended Disclosure Statement concealed three

subsidiaries and $14 million in debt that show up in Debtor's Tax Returns provided to me by Debtor's Counsel, clearly bringing into question its diligence and honesty.

4. <u>The Information Is Readily Available</u>. I list at Exhibit B, materials that are timely relevant to this case that I know to have existed at the time I was employed by Debtor. Unless they have been destroyed, which they should not have been, they should all be immediately made available. I also plead that Debtor, neither directly nor through Debtor's counsel, should be permitted to censor or filter the information given a) their interested judgment on what Creditors need to see given pending litigation against it and b) the history of concealment in this case.

5. <u>Debtor Bad Faith Behavior re: Employee Work Product</u>. I worked on files during my tenure at Ellipso which are at the core of Debtor's residual value. There is no reason these should remain concealed immediately since I delivered them to a computer server in Debtor's office after leaving its employment. As an additional example of Debtor's bad faith, I draw your attention to Exhibit C showing either David Castiel or Debtor's Counsel must have lied. My email of July 2, 2009 shows my promise to deliver all the company information I had yet on July 14 Debtor's Counsel's email states Castiel had told him nothing was there. Fortunately I had a witness and had taken photographs of how I left the offices which you can see attached to my same day email response to Debtor's Counsel.

WHEREFORE, this Creditor asks this Honorable Court to APPROVE this Motion.

Respectfully submitted,

John Page, Creditor, *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2009, true copies of the foregoing Motion were served upon the following by first class mail, postage prepaid:

Martha L. Davis, Esquire
Office of the United States Trustee
115 S. Union Street, Room 210
Alexandria, VA 22314

Neal Goldfarb, Esquire
Kermit A. Rosenberg, Esquire
Butzel, Long, Tighe, Patton, PLLC
1747 Pennsylvania Avenue, N.W., Third Floor
Washington, D.C. 20006-4604

John Page, Creditor, *pro se*

## EXHIBIT A

### DEBTOR BREACHES DUTY TO CREDITORS

**From:** john.h.page@gmail.com [mailto:john.h.page@gmail.com] **On Behalf Of** John Page
**Sent:** Thursday, July 09, 2009 10:20 PM
**To:** Linda Awkard
**Cc:** Kermit Rosenberg; Dan Sullivan; John Mann; Steven A. Lerman; Tom Patton
**Subject:** Due diligence information checklist

Dear Linda,

It has been almost a week and you have not responded to my email (see copy below). Please advise Ellipso's intentions in providing creditors reasonable due diligence information.

Regards, John

On Fri, Jul 10, 2009 at 1:26 PM, Kermit Rosenberg <KRosenberg@butzeltp.com> wrote:
No one has responded to you because all creditors and all bidders will receive the same information. Information will not be dealt with piecemeal. You already have all available information, yet you continue to try to waste our time.

**From:** john.h.page@gmail.com [mailto:john.h.page@gmail.com] **On Behalf Of** John Page
**Sent:** Friday, July 10, 2009 2:13 PM
**To:** Kermit Rosenberg
**Cc:** Linda Awkard; Tom Patton; Neal Goldfarb; Dan Sullivan; John Mann; Steven A. Lerman
**Subject:** Obstruction of alternatives Re: Due diligence information checklist

Dear Kermit,

1. I need information that I do not currently possess in order to file comments regarding the company's motion for its Chapter 11 plan. You appear to be confusing this with information required by bidders at the "Stalking Horse" auction in that proposed plan.

2. What information are you referring to when you say "you already have all the available information"? All I have to go on is the public domain information and this is inadequate, hence my email.

If you would care to read my email again, the above points are quite clear. It seems to me that Ellipso's strategy is to not disclose any useful pre-hearing information in the hope of minimizing objections to flaws in its plan. For example, I believe there are non-auction alternatives not currently known to the company that could provide the creditors over $1 million.

My request has nothing to do with wasting anybody's time, it has to do with ensuring that creditors have the appropriate information with which to review and comment on the Debtor's motion, for which there are ample precedents, and to consider alternatives.

I am aware that disclosures of proprietary non-public information should be done in a manner which protects the Debtor's business and have provided for this in my email. I look forward to a constructive response.

Regards, John

Jul 10

**Kermit Rosenberg**

to John, Linda, Tom, Neal, Dan
The confusion if any, is yours. All information will be made available to all creditors and all bidders. Please provide whatever information you may have on "non-auction alternatives not currently known to the company that could provide the creditors over $1 million."

## EXHIBIT B

## DEBTOR INFORMATION OF INTEREST

The following lists information known to exist in Debtor's offices until, at the latest, June 26th:

1. <u>Debtor's CEO's Computer</u>. This property of the company contains electronic copies of most important and all recent documents of the Debtor and its subsidiaries including accounts, board minutes, business agreements, business plans and correspondence. A copy of the hard drive of this computer has been approved and requested but not provided.

2. <u>File Boxes.</u> Including the contents of file cabinets, the office contained approximately 120 file boxes covering all areas of the company's activities. The files had been sorted into stacks covering topics such as litigation, litigation billing, contracts, Virtual Geo etc. They should be in good order as Ms. Blakely was paid to sort through them in 2008.

3. <u>John Page's Employee computer files</u>. 3,000 Megabytes of files and emails copied to the designated company server. I augmented this in October 2009 after being informed that the company's email server had lost a year's worth of my emails (details are contained in my Opposition to David Castiel's Objection to my Claim). All of this information can fit onto a single DVD-R disc.

# EXHIBIT C

**From:** john.h.page@gmail.com [mailto:john.h.page@gmail.com] **On Behalf Of** John Page
**Sent:** Thursday, July 02, 2009 7:17 PM
**To:** David Castiel; Pat Mcnanley
**Cc:** Dan Sullivan; Linda Awkard; Kermit Rosenberg; Neal Goldfarb; Tom Patton
**Subject:** Re: Housekeeping matters

David,

Thanks. I think Monday is doable.

1. I have Ellipso company information (files, emails etc) on magnetic media that is my own property. This being the case, I will copy it to the computer in the conference room before I delete it from my own property.

2. I will leave all hardcopy of company information in my office. I have none outside the office.

2. Copying the above electronic information, deinstallation of my desktop computer (except the monitor, which is not mine) and location other items on loan to the company (mostly cables, IP phones and wifi gear including router not currently in use) will likely take more than 30 minutes.

Obviously I expect my personal property in the office to be intact. If you have taken any copies of my personal information or files please destroy them.

Please let me know if you see any further issues.

Regards, John

| | | |
|---|---|---|
| From | Dan Sullivan <DSullivan@butzeltp.com> | Jul 14 |
| To | John Page <jpage@null.net> | |
| Cc | Linda Awkard <lawkard@earthlink.net>, Kermit Rosenberg <KRosenberg@butzeltp.com>, Neal Goldfarb <NGoldfarb@butzeltp.com>, Tom Patton <TPatton@butzeltp.com>, David Castiel <dcastiel@ellipso.com> | |
| Date | Tue, Jul 14, 2009 at 3:01 PM | |
| subject | RE: Housekeeping matters | |
| mailed-by | butzeltp.com | |

Mr Page: I understand from Dr. Castiel that no papers were left in your office and that no files were transferred to the conference room computer. If I am mistaken in this understanding, please advise me where the hard-copies were left and to what drive and folder the electronic files were downloaded.

Thank you.

*William Daniel Sullivan*

**BUTZEL LONG TIGHE PATTON, PLLC**
1747 Pennsylvania Ave., N.W., Suite 300
Washington, D.C. 20006
Tel: 202-454-2850 Fax: 202-454-2805

**John Page** <jpage@null.net>                                                                 Jul 14

from
  To Dan Sullivan <DSullivan@butzeltp.com>,
    Pat Mcnanley <pmcnanley@bringcom.com>

  Cc Linda Awkard <lawkard@earthlink.net>,
    Kermit Rosenberg <KRosenberg@butzeltp.com>,
    Neal Goldfarb <NGoldfarb@butzeltp.com>,
    Tom Patton <TPatton@butzeltp.com>

Date Tue, Jul 14, 2009 at 3:40 PM
subject Re: Housekeeping matters
mailed-gmail.com
    by

Dan,

Please find attached photographs I took of my office and the receptionist area in the presence of Bringcom's representative immediately before I left the office.

You can clearly see all the Ellipso hard copy files that were in my possession, approx four boxes worth, neatly stacked in the drawers of my former office filing cabinet and on top of it. Also attached is a photograph of the reception area showing that I removed my desktop computer but left the monitor it had been attached to, since it was not mine.

The electronic files were copied to the conference room computer (which only has one drive) under My Documents for the main account on that computer and into a folder named JohnPage files (or very similar name).

I did exactly what I said I would and everything was easy to find.

Regards, John



**Page Office Top Drawer.JPG**
113K  View  Download



**Page Office Bottom Drawer.JPG**
103K  View  Download



**Page Office Furniture.JPG**
125K  View  Download