UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re:                                          )
                                                )    Case No. 09-00148
    ELLIPSO, INC.,                          )    (Chapter 11)
                                                )
        Debtor.                          )
_____)

**Motion of Kermit Rosenberg, Neal Goldfarb, and Butzel Long Tighe Patton, PLLC
to Alter, Amend, and Reconsider the Denial of their Motion for Leave to Withdraw
Or, in the Alternative,
For an Order Staying Their Duty to Represent the Debtor Pending Appeal**

The undersigned ask the Court to reconsider its order of January 5, 2010, denying their motion for leave to withdraw from representing the Debtor. In the alternative, the movants ask that their duty to represent the Debtor be stayed pending appeal of the Court's ruling.

    **1. The Office of Bar Counsel has confirmed that we have an unwaivable conflict and *cannot* represent the Debtor.**

After the Court's ruling, the movants sought the advice of D.C. Bar Counsel about how to deal with what the movants believe to be a serious ethical dilemma: an obligation to represent the Debtor in the face of Rules of Professional Conduct that absolutely preclude us from doing so.

The discussion that ensued (which included conveying to Bar Counsel all of the relevant facts) confirmed that the movants are faced with a serious and unwaivable conflict of interest—notwithstanding that the RICO complaint has not been served.

We spoke with two attorneys at the Office of Bar Counsel: Hope C. Todd, Esq. and Saul Jay Singer, Esq.  They advised us that we had an obligation immediately to withdraw from the representation.  When we informed Bar Counsel that we had sought leave to withdraw and were denied (including the reasons for the denial), Bar Counsel

were dumbfounded. Ms. Todd said that she was "at a loss" about how to advise us. After commenting colorfully on the absurdity of the position in which this Court's ruling placed us, Ms. Todd and Mr. Singer indicated that they would be glad to discuss their conclusions with the Court. They can be reached at 202-737-4700.

Bar Counsel cited several provisions of the Rules of Professional Conduct as prohibiting us from continuing to represent the Debtor, including Rules 1.7(a) and 1.7(b)(4).

Rule 1.7(a) provides, "A lawyer shall not advance two or more adverse positions in the same matter." There are *no exceptions* to this rule. As noted in Comment 2 to the Rule, "Institutional interests in preserving confidence in the adversary process and in the administration of justice preclude permitting a lawyer to represent adverse positions in the same matter. For that reason, paragraph (a) prohibits such conflicting representations, *with or without client consent*." (Emphasis added.)

Rule 1.7(b) provides:

> Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:
>
> . . .
>
> (4) The lawyer's professional judgment on behalf of the client will be or *reasonably may be* adversely affected by the lawyer's…own financial, business, property, or personal interests. [Emphasis added.]

As the comments to Rule 1.7 note, "The lawyer's own interests should not be permitted to have an adverse effect on representation of a client." D.C. RPC 1.7, comment 11. The comment goes on to say that "if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice."

2

Moreover, Rule 1.7(c) makes it clear that where the lawyer reasonably believes that his ability to represent the client diligently has been compromised, the conflict cannot be cured by obtaining the client's consent:

> (c) A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if
>
> (1) Each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; *and*
>
> *(2) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client.* [Emphasis added.]

And nowhere else in Rule 1.7 is there anything that would permit the movants to continue representing the Debtor in the circumstances here.[1]

Rule 1.7 is binding on this Court. The Court's local rules provide that attorneys practicing before the Court are governed by the disciplinary rules that apply in the district court, and the district court's local rules incorporate the D.C. Rules of Professional Responsibility. LBR 2090-1; LCvR 83.15(a).[2]

### 2. The Court's conclusion that we do not have an interest adverse to the estate and are still disinterested is manifestly erroneous.

At the hearing on January 4, the Court gave two reasons for denying the movants' motion for leave to withdraw: first, that the movants' claim against the debtor for

---

1. Although Rule 1.7(d) provides a limited exception for some cases, by its own terms it does not apply where, as here, the conflict arises under Rule 1.7(b)(4). Rule 1.7(d) provides:

> If a conflict not reasonably foreseeable at the outset of representation arises under paragraph (b)(1) after the representation commences, and is not waived under paragraph (c), *a lawyer need not withdraw from any representation unless the conflict also arises under paragraphs (b)(2), (b)(3), or (b)(4)*. [Emphasis added.]

2. This Court's local rules still refer to the old numbering system for the District Court's local rules. Nevertheless, they express the clear intent to apply in this Court the same rules of professional conduct that govern practice before the district court.

3

indemnification was speculative and, second, that the movants did not seek to withdraw after seeing the draft complaint that was attached to the amended proofs of claim filed by the Mann/Patterson group. With all respect, both of those reasons are manifestly erroneous.

### *a. The movants' claim is not speculative*.

The movants' claim for indemnification (and/or contribution) is not speculative. Rather, it is—to use the appropriate bankruptcy terminology—*contingent.* Certainly the claim is concrete enough that if it were not for the automatic stay, the movants could assert it as a third-party claim in the Mann/Patterson lawsuit. It is also sufficiently concrete that it could be made the subject of a proof of claim in bankruptcy court.

The conclusion that the movants' adverse interest is not speculative is not changed by the fact that the movants have not yet been served. By filing their complaint, Mann and his associates have gone beyond the stage of merely making threats; they have commenced actual litigation. The movants' status as defendants in the RICO action is not a matter of speculation.[3]

Nor is the movants' adverse interest speculative merely because *the movants* believe that the claims against them are unfounded. As competent attorneys always tell their clients, it is impossible to predict what will happen in litigation; claims that the attorney thinks are insufficient on their face may result in litigation lasting for years  So what creates the adverse interest is the mere filing of the complaint. And the members of Mann/Patterson group obviously don't think that their claims are baseless. Since this Court cannot adjudicate the claims against the movants, the Court cannot decide

---

[3]  Service is not required before a defendant may file responsive pleadings or motions, for example—and it is certainly not required before (a) reporting agencies report the status of defendants as defendants or (b) a defendant is required to report the complaint to its insurers.

4

counsel's ethical responsibilities on the basis of how it thinks the claims should be resolved, just as the movants cannot base their own decisions on their views of the claims' merits.

As a necessary corollary, it would be inappropriate for the Court to consider the merits of the movants' contingent claim against the estate.  Unless and until a contingent claim is litigated and disallowed, it is a claim.  Furthermore, the professional is regarded as having an interest adverse to the estate if it merely "*assert[s]*" an interest hostile to the estate *Bank Brussels Lambert v. Coan* (*In re AroChem Corp.*), 176 F.3d 610, 623 (2d Cir. 1999) (emphasis added). *See also Bank Brussels Lambert v. Coan* (*In re AroChem Corp.*), 176 F.3d 610, 623 (2d Cir. 1999) (conflict and impermissible disinterestedness created by possession of "any economic interest that would tend to lessen the value of the bankruptcy estate" or "a predisposition under circumstances that render such a bias against the estate").

The movants here *do* assert that they have a contingent claim against the estate as a result of having been sued by the Mann/Patterson group. That is all that matters.

If the facts that now exist existed at the commencement of the representation, it is abundantly clear that the movants/defendants could not represent the Debtor: it is inconceivable that they would have been found to be disinterested persons, notwithstanding the fact that the claim was contingent.  The Bankruptcy Code's definition of "disinterested person" is "sufficiently broad to include any professional with an interest or relationship *that would even faintly color the independence and impartial attitude required by the Code." In re BH & P Inc.*, 949 F.2d 1300, 1308 (3d Cir.1991) (emphasis added; internal quotation marks and citation omitted). The standard of disinterestedness

5

and adverse interest is the same now as it is when the court considers an application for appointment, and the Rules of Professional Responsibility do not (as noted above) allow continued representation in the face of such after-arising conflict.

To conclude that the movants do not have an adverse interest and are still disinterested would mean that if the movants were not already representing the Debtor, they would be eligible to be appointed as its counsel—and the Court knows that that would *never* happen. Conversely, if the movants would not now be eligible for appointment as the Debtor's counsel, they cannot be eligible to continue serving as the Debtor's counsel.

### b. *The movants' untenable position is concrete and immediate.*

While the Rules of Professional Conduct look to conflicts that exist merely on their face, the fact is that the conflicts in this representation are real and immanent. They are not limited to eventually pointing the finger away from the undersigned counsel and at the debtor or seeking indemnity from the debtor in the RICO case or by a claim against the Debtor in this bankruptcy. Rather, they exist in the everyday conduct of this case on behalf of the Debtor.

As only one example, the Court has ordered the US Trustee to file a motion to convert the case to a Chapter 7 proceeding or to authorize the appointment of a Chapter 11 trustee. The interest of the movants is to move the Court to dismiss the proceeding altogether so that they will no longer be counsel to the Debtor—at all.[4] That interest is directly contrary to the interests of the Debtor, for which dismissal of its case is the *least* desirable option. That means that, if counsel take *any* position on behalf of the Debtor,

---

[4] While the *court-required* obligations of counsel to the debtor might be limited if the debtor is not in possession, the undersigned would nonetheless be counsel to the debtor for whatever positions the debtor might seek to assert.

6

they would have to take a position contrary to their own interests. Counsel are then subject to the *ethical* (and, therefore, eventually legal malpractice) charge of having failed zealously to pursue the interests of the debtor as a result of their conflict. *See, e.g., In re John Patrick Craig*, 265 B.R. 624, 628 (M.D. Fla. 2001) (provision in retention agreement allowing counsel to seek to dismiss bankruptcy case created impermissible conflict).

Even in so mundane a matter as the production of documents requested by Mann and his confederates, the pre-production review by counsel for privilege, relevance or other issues is going to be forever subject to scrutiny for (and allegations of) producing and/or withholding documents in their own interest—the same kinds of allegations already made in the case in which movants are already defendants.

It may well be true that as to some specific matters in this case, the movants' interests are congruent with the Debtor's. And if the movants were *special* counsel for the Debtor, that would be relevant, because special counsel are permitted to have interests adverse to the estate as long as those interests are unrelated to the matter as to which special counsel is employed. 11 U.S.C. § 327(e). But the movants are not special counsel, and the relevant question here is whether the movants have *any* interest that is materially adverse to the estate. Where such an interest exists, it cannot be canceled out merely because there are particular issues that the conflict might not directly affect.

Even if one were to <u>ignore</u> the *prohibition* of both the Code and the Rules of Professional Conduct, doing so would place counsel in the position of being second-guessed regarding what matters might or might not have an impact on counsels' interests in the RICO litigation. Nothing this Court says or does is going to prevent such second-

7

guessing. And nothing that counsel might do or give advice upon in this bankruptcy will remove from *this bankruptcy case* the taint of the Debtor having had counsel whose advice and actions are subject to doubt. These are the circumstances that give rise to the prohibition of the Rules: that counsel's advice and actions cannot be given without regard to their own interest.

### c. *The movants' prior awareness of the* **draft** *complaint is irrelevant.*

Contrary to what the Court apparently believes, the movants' ineligibility to remain as the Debtor's counsel is not in any way affected by the fact that they did not move to withdraw after seeing an unfiled draft of the Mann/Patterson group's complaint.

The draft complaint represented nothing more than a threat to sue the movants. Counsel reasonably believed that a mere threat did not create an adverse interest and that it would be inappropriate to give in to what they regarded as an intimidation tactic. But the actual filing of the complaint changed the situation dramatically. What was previously a mere possibility became a reality. Whereas the mere threat did not create an adverse interest, the carrying out of that thread did.

Even if the Court thinks that learning that a suit is being threatened is equivalent to learning that suit has actually been filed, that is something that reasonable people could disagree about. The movants acted reasonably in believing that the threat did not disqualify them and therefore in not seeking to withdraw until they learned that the complaint had been filed. And their decision not to seek withdrawal then has nothing to do with whether there is a conflict now.

A conflict is a conflict no matter when it is brought to the attention of the Court. The question before the Court is whether the movants have a conflict *now*, and if they do, the fact that they did not perceive the earlier threat as creating a conflict is irrelevant.

### 3. Denying the movants leave to withdraw would subject them to irreparable prejudice.

Counsel for the Debtor are now parties in interest in this case in much more than the technical sense. They are real claimants against the Debtor's estate who are entitled under the Bankruptcy Code file a claim against the estate for indemnification and/or contribution. But so long as the movants remain counsel to the Debtor, they are forbidden by the rules of ethics from exercising that right. If the movants were to file such a claim, they would be asserting a claim against their own client—in the very proceeding in which they represent that client. The rules of legal ethics do not require that lawyers give up their own claims, arising after the commencement of representation, and continue to represent a client to whom they have become adverse.

It does not matter whether this Court thinks (without having seen the claim, much less adjudicated it), that such a claim would be viable. The movants would be barred from ever asserting such a claim if the Court were to confirm the Mann plan of reorganization (which sets a deadline on the filing of administrative claims), and they would be barred from asserting such a claim so long as the Debtor remained their client.

And that is not the only way in which remaining as counsel would restrict the movants' freedom of action. The movants are precluded from moving to dismiss the bankruptcy. They are precluded from lobbying creditors who have voted for the Mann plan to change their votes. They are precluded from encouraging creditors who voted against the Mann plan not to withdraw their claims in response to the Mann/Patterson

9

group's attempt at intimidation. (Several of the creditors who rejected the Mann plan are named as defendants in the RICO suit.[5]) Finally, the movants would be precluded from contesting the *legality* of a plan under which their interests will—because of their mandated status as the Debtor's counsel—be excluded because they are ethically prevented from filing it.

### 4. If the movants are not permitted to withdraw, they ask this Court to stay any obligation that they actively represent the Debtor pending an appeal.

The Court's denial of our motion for leave to withdraw has (in the words of D.C. Bar Counsel) put us "between a rock and a hard place" by, in effect, requiring us to violate the Rules of Professional Responsibility. If the Court declines to reconsider that ruling, the Court should at a minimum stay counsel's obligation to act on behalf of the Debtor pending an appeal to the district court and (potentially) the court of appeals.

The basis for such relief is compelling. As matters stand now, the movants are damned if they do and damned if they don't. The Court's refusal to let us withdraw requires us to continue our representation even though we think—and Bar Counsel has told us unequivocally—that we cannot represent the Debtor because we cannot do so objectively and without any adverse interest. If the movants take action on behalf of the Debtor, we face the risk of claims that we acted improperly. And if we try to avoid such claims by not doing nothing, we face the risk of claims that our *refusal to act* is improper. Forcing counsel to face this dilemma—for which even a successful appeal might not provide a remedy—is grossly unfair.

The discussion above has shown that the movants have raised very serious questions about the Court's decision and that they are substantially likely to prevail on an

---

5.    Two creditors—James Bailey and Baker Botts, LLP—have already withdrawn their claims rather than face the burden of litigating the Mann/Patterson group's objections.

10

appeal.  The only potential detriment to other parties in interest in this proceeding would be, at worst, one of some delay in the progress of this bankruptcy, which hardly constitutes irreparable injury. And, of course, nobody in the Mann/Patterson group can be heard to complain about any delay, since the delay would be the result of was their own decision to sue the movants.

        Respectfully submitted,

        /s/ Kermit A. Rosenberg
Kermit A. Rosenberg (D.C. Bar No. 219089)

        /s/ Neal Goldfarb
Neal Goldfarb (D.C. Bar No. 337881)

Individually and on behalf of:
Butzel Long Tighe Patton, PLLC
1747 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006-4604
Telephone: 202.454.2800
Facsimile:  202.454.2805
krosenberg@butzeltp.com
ngoldfarb@butzeltp.com

*Movants*

CERTIFICATE OF SERVICE

      I hereby certify that on January 6, 2010, true copies of the foregoing Motion were served electronically using the Court's Electronic Case Filing System upon all parties entitled to receive such notice and upon the Debtor, the United States Trustee, and all creditors and parties in interest set forth on the service list attached to the original Notice of Hearing of and Opportunity to Object to this Motion filed with the Clerk of this Court by first class mail, postage prepaid. The following creditors were also served by email:

| Name | Email |
|---|---|
| John Mann | jmann@dishmail.net |
| Ronald B. Patterson, Esq. | ronplegacy@hotmail.com |
| Robert B. Patterson | legalmanagement@yahoo.com |
| David Dort | ddort@dort.com |
| Richard Burt | rburt@maglobal.com |
| CBIZ | JEstrada@CBIZ.com |
| David Castiel | dcastiel@ellipso.com |
| John Page | john.h.page@gmail.com |
| Morris Nichols | wtuthill@mandt.com |
| Leftwich & Ludaway | noludaway@leftwich.com |
| Baker & Botts | skropf@bakerbotts.com |
| Mark Zaid | mark@markzaid.com |
| Lerman Senter, PC | mfaller@shulmanrogers.com |
| Linda Awkard | lawkard@earthlink.net |
| Gerald Helman | ghelman@ellipso.com |
| Vanessa Carpenter Lourie | vlourie@carpenterlourie.com |

      /s/ Kermit A. Rosenberg
      Kermit A. Rosenberg