The document below is hereby signed.

Signed: April 02, 2010.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ELLIPSO, INC., | ) | Case No. 09-00148 |
| | ) | (Chapter 11) |
| Debtor. | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION RE MOTION TO ACCEPT
<u>BALLOT MISDIRECTED TO COUNSEL FOR THE DEBTOR-IN-POSSESSION</u>

Mark S. Zaid, P.C. has filed a motion to enlarge the time for submission of its ballot on the proposed chapter 11 plan of John B. Mann so that the ballot is counted as a vote against the plan. The motion will be granted based on the following findings of fact and conclusions of law.

I

Mark S. Zaid, P.C. holds a prepetition claim against the debtor, Ellipso, Inc., for $10,000. Mark S. Zaid, the president of Mark S. Zaid, P.C., timely received copies of the proposed

plan, disclosure statement, ballot and balloting instructions.[1] Zaid was peripherally aware that there was a ballot to be voted on by December 15, 2009, but he had not turned his attention to the documents before he received an e-mail from John Mann on December 12, 2009, which stated:

> Bob Patterson suggested that I email the attached to you, instead of relying on snail-mail. As you may be aware, Ellipso has filed for Chapter 11 bankruptcy, and the Court has approved my plan for reorganizing the debtor.
>
> While I regret that so many creditors have been hurt by Ellipso, the Plan offers some prospect of recovery. The attached Ballot is due back to me no later than Tuesday, Dec. 15, 2009, so that I may report the results to the Court.

---

[1] The record does not reveal that Mann sent Zaid a copy of the order approving the disclosure statement, setting the deadline for sending a ballot to Mann, and giving notice of the confirmation hearing. That three-page order recited that it was to be mailed by November 20, 2009, to all creditors, and in paragraph B stated:

> December 15, 2009, is fixed as the last day on which the holders of claims and interests may accept or reject the amended plan by causing receipt by the proponent of a completed ballot by said date;

The order listed Mann's mailing address at the foot of the last page of the order. Within five days of mailing, Mann was required to file a certificate reflecting that he mailed the order with the disclosure statement, plan, and ballot to each creditor. My review of the docket does not disclose that a certificate of mailing was filed. Nevertheless, without deciding the issue, I will assume, in favor of the parties opposing Zaid's motion, that Mann sent Zaid a copy of the order approving the disclosure statement, as that assumption does not alter the outcome. If Mann did not send a copy of the order to Zaid, that would weigh heavily in favor of finding excusable neglect, and might even require that the motion be granted without addressing the issue of excusable neglect.

> You may sign and fill out the Ballot and sign it, scan it and email it to this address if that is most convenient. Ellipso has listed your claim at $10,000.

While Zaid is a lawyer, he has little experience in bankruptcy matters. Zaid had little expectation of recovering any of the debt owed him, and he did not want to spend much, if any, more wasted time on matters relating to Ellipso, Inc. Therefore, he did not immediately turn his attention to the rather voluminous documents he had received. Nevertheless, he did respond to Mann's e-mail on December 14, 2009, at 8:02 p.m., stating:

> My apologies for not getting back to you sooner. Mr. Patterson has also tried to reach me. I have a very important hearing tomorrow that is dominating my time so Ellipso is not high on my priority list.
>
> Candidly, I don't anticipate ever getting any money from Castiel/Ellipso.
>
> Can you elaborate how my voting in favor of your plan would impact me, if at all?

Mann apparently did not respond to this e-mail.[2]

On or about December 14, 2009, Zaid was also contacted by both David Castiel (the chief executive officer of the debtor) and James Bailey, a creditor and former employee of the debtor. They asked Zaid to vote against the plan.

The debtor at that time was serving as a debtor in possession with fiduciary duties regarding the bankruptcy estate

---

[2] Zaid does not recall if Mann responded, and Mann has not suggested that he did respond. (Zaid inadvertently deleted his December 2009 e-mails, and thus could not verify from them whether Mann responded.)

under 11 U.S.C. § 1107(a).  In an e-mail, Castiel, the debtor's chief executive officer, asked that Zaid e-mail or fax his ballot either to him or to Kermit Rosenberg, counsel for the debtor in possession.  Zaid assumed that Castiel (as chief executive officer of the debtor) was saying that sending the ballot to Castiel or to Rosenberg was all that he needed to do.  Not having had a response to his e-mail of 8:02 p.m. on the evening of December 14, 2009, to Mann, Zaid sent his executed ballot to Kermit Rosenberg by e-mail early the next day, December 15, 2009, at 1:57 a.m.  He assumed that Rosenberg would transmit the ballot to Mann.

    Based on his thinking that Castiel was saying that he only needed to send the ballot to Castiel or Rosenberg, Zaid failed to comply with the ballot's clear and conspicuous instruction that the ballot be sent to Mann.  But it was not a deliberate failure

to comply with the instruction.[3]

Zaid did not learn of his mistake until Mr. Mann e-mailed him on December 23, 2009, stating:

> I did not receive your ballot in the Ellipso reorganization.
>
> However, at the plan confirmation hearing on Dec. 22, 2009, Ellipso's bankruptcy counsel, Mr. Kermit Rosenberg, Esq. provided the Court with what he and Mr. Castiel asserted was your signed ballot, rejecting the plan, and dated Dec. 14, 2009.

---

[3] The instruction appeared, first, on the front page of the ballot as part of the following language in bold letters:

> **You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in class IV under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**
>
> **If your ballot is not received by John Mann, 9330 Harts Mill Road, Warrenton, VA 20186 <u>on or before *December 15, 2009*</u>, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**
>
> **If the Plan is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.**

The ballot on its second page, underneath the space for signing of the ballot, repeated the instruction in summary terms by stating:

> RETURN THIS BALLOT TO:
>
> <u>**John Mann**</u>
> <u>**9330 Harts Mill Road**</u>
> <u>**Warrenton, VA 20186**</u>

> However, given the timing of our limited correspondence on Dec. 14, and since as of this date I have not even received a late copy of your ballot, I am puzzled by the document that Mr. Castiel provided the Court.
>
> Ordinarily, I would consider this just an inadvertent failure to meet a voting deadline.  But since Ellipso and David Castiel have been found to have lied in discovery, to the District Court, and to the Court of Appeals, I'm sure you will understand my concern that your ballot (attached) was genuine and obtained in good faith.
>
> If you would be so kind to confirm its authenticity, and the circumstances under which it was obtained, it would set my mind at ease that not yet another misrepresentation has been made in Federal Court.

On January 4, 2010, Zaid replied by e-mail, stating:

> Sorry for the delay in my response. I was away on vacation.
>
> The ballot was authentic. I was told, contrary to what was stated on the ballot, that I could simply send it to Ellipso's counsel.

Zaid believed, in light of Mr. Mann's statement, that Mann would consider Zaid's apparent failure to properly direct the ballot to Mr. Mann "just an inadvertent failure," and that if Zaid confirmed the ballot's authenticity, the ballot would be counted. Zaid did not learn until the week before filing his motion on March 12, 2010, that Mann did not count Zaid's vote in the ballot summary he provided to the court, and that Zaid's vote was important in determining whether the court would approve the plan.

Mann's plan was not in a procedural posture that it could be confirmed at the confirmation hearing on December 22, 2009.  In

an attempt to obtain confirmation of the plan, Mann and creditors allied with Mann have filed objections to numerous claims seeking to disallow those claims so that their votes against the plan will not be counted, or if counted will be counted in a reduced dollar amount. That claims-objection process is not completed even as of this date. Moreover, Mann has moved to modify his plan, and that will entail further delay and potentially the necessity of re-balloting.

The parties objecting to Zaid's motion noted only one potential challenge to Zaid's claim, an alleged statute of limitations defense. That defense, if it is asserted via an objection to Zaid's claim, ought to be relatively straightforward to resolve.

## II

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1992), the Court addressed "excusable neglect" in the context of a late proof of claim and Fed. R. Bankr. P. 9006(b)(1), stating:

> Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" . . . is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.

*Id.* at 392 (footnotes omitted). As to whether neglect is "excusable," the Court stated:

> the determination is at bottom an equitable one, taking

7

> account of all relevant circumstances surrounding the
> party's omission. These include ... the danger of
> prejudice to the [non-moving party], the length of the
> delay and its potential impact on judicial proceedings,
> the reason for the delay, including whether it was
> within the reasonable control of the movant, and
> whether the movant acted in good faith.

*Id.* at 395 (citation and footnotes omitted).

Zaid has demonstrated that his ballot ought to be allowed to be treated as timely based on excusable neglect. First, there is no danger of prejudice to Mann. The existence of Zaid's ballot was made known to Mann at the confirmation hearing on December 22, 2009. Allowing the ballot to be submitted out of time will not disrupt the confirmation process, which, at this juncture, is not susceptible of being concluded until the objections to claims process is resolved. Indeed, Mann's e-mail of December 23, 2009, to Zaid failed to voice any concern that Zaid's ballot was prejudicial to Mann.

Second, the length of the delay was minimal. Mann was made aware of the ballot on December 22, 2009, and in response to Mann's e-mail of December 23, 2009, Zaid verified the ballot's authenticity on January 4, 2010, after the conclusion of the Christmas and New Year's holidays. Once he learned that Mann (despite Mann's e-mail of December 23, 2009, suggesting that Mann only wanted assurances that the ballot was authentic) was taking the position that the ballot ought not be counted, Zaid moved promptly to allow the ballot to be counted.

A final consideration under *Pioneer*, as noted above, is "the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Zaid timely completed the ballot, and his sending the ballot by the deadline of December 15, 2009, to Kermit Rosenberg, counsel for the debtor in possession, instead of to Mann was inadvertent, based on a misunderstanding that mailing to Rosenberg as counsel for the debtor in possession would suffice. Mann expressly recognized in his e-mail of December 23, 2009, to Zaid that the failure was inadvertent. Although it was within the reasonable control of Zaid to comply with the explicit instructions on the ballot and to mail the ballot to Mann, Zaid clearly proceeded in good faith.

Although inadvertence usually does not constitute "excusable" neglect, the relevant circumstances here convince me that, as an equitable matter, Zaid's failure to submit a ballot to Mann in a timely fashion was excusable neglect.

An order follows.

[Signed and dated above.]

Copies to: Office of U.S. Trustee; Ronald B. Patterson, Esq.;
Wendell W. Webster, Esq.; Kermit Rosenberg, Esq.; and:

Robert Patterson
9330 Harts Mill Rd.
Warrenton, VA 20186
c/o J. Mann

John B. Mann
9330 Harts Mill Rd.
Warrenton, VA 20186

David Castiel
2831 44th Street, NW
Washington, D.C. 20007

John Page
1077 30th Street, NW, #411
Washington, DC 20007

David Castiel
2831 44th Street NW
Washington, DC 20007-1135

Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036