UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re:                                        )
                                              )    Case No. 09-00148
    ELLIPSO, INC.,                       )    (Chapter 11)
                                              )
        Debtor.                        )
                                              )

**Reply in Support of Debtor's Motion
to Disallow Claims No. 6, 7, 10 & 11
or in the Alternative
to Impose Preclusive Sanctions and/or
to Disallow Counts I, II, V–X & XII–XXV,
and Disallow Count XI in Part, as a Matter of Law**

The Mann–Patterson Claimants' opposition (DE 938) to the Debtor's motion to disallow their claims (DE 918) is remarkably lacking in substance.

In response to most of our arguments, the Mann–Patterson Claimants offer nothing that even remotely resembles legal analysis. Instead, they fall back on conclusory denials that are little more than what one would expect to find in an answer to a complaint. These non-arguments require no response. We will therefore focus here on the points as to which there is a scrap or two of meat on the opposition's bare bones.

**1. The Mann-Patterson Claimants cannot hide behind the slogan of "notice pleading" or the argument that they have not taken discovery.** Although the Debtor's motion focuses more on the legal defects in the Mann–Patterson claims rather than on their lack of specificity, the Mann–Patterson Claimants' opposition starts off with the sort of boilerplate argument that is out of place in the *Twombly–Iqbal* era: "Of course the initial pleadings contain allegations and conclusions. The Federal Rules of Civil

Procedure specify that a complaint is notice pleading. The detailed proof is presented at trial."[1]

That argument is especially inappropriate here. The Mann–Patterson Claimants were ordered to provide additional information about their claims, and when they finally got around to complying, they were unable to come up with specifics. They are therefore in no position to complain that the facts need to be developed further before the issues can be decided. If the Mann–Patterson Claimants actually had any facts to support their claims, they would have disclosed them pursuant to the Court's order. Nor do they have the right to complain that the facts they rely on are in Ellipso's sole knowledge. The amended claims were filed more than six months ago, the original claims several months before that, and the objections to those claims were filed promptly thereafter. yet the Mann–Patterson Claimants have taken no discovery. The Court first directed the Mann-Patterson Claimants on January 19 (in open court) to file their particulars. It took five more directives and orders to get them to do so, and even then they missed the latest deadline. Yet they have still sought no discovery on matters they claim only Ellipso knew.

**2. The inclusion of RICO claims is insufficient to support non-RICO counts that cannot stand on their own.** Contrary to what the Mann–Patterson Claimants contend,[2] it is entirely appropriate to analyze each count of their complaint separately. They cite no authority to support their position that because they assert a RICO claim, their kitchen sink full of other claims is entitled to a free pass. As in any other case, a count that is legally deficient should be dismissed, even if the allegations it is based on

---

1. Opp. at 2.
2. Opp. at 3.

2

are also alleged to be relevant to a claim under RICO. Such a dismissal will not prevent the Mann–Patterson Claimants from relying on those allegations in support of the RICO claims.

**3. It is irrelevant when the Mann–Patterson Claimants discovered the alleged theft of the MCI/Verizon contract opportunity.** The Mann–Patterson claimants argue that TRSC's claim regarding the alleged theft of the MCI/Verizon contract opportunity is not time barred, because the alleged theft was not discovered until after Ellipso filed for bankruptcy. That argument is irrelevant because our motion did not cover TRSC's tortious-interference claim, and our argument regarding TRSC's antitrust claims did not rely on the statute of limitations.

**4. Our arguments regarding the statute of limitations and *res judicata* can be decided on the basis of the record as currently stands.** Although the Mann–Patterson Claimants contend that the statute-of-limitations and *res-judicata* issues cannot be decided without a more complete factual record. However, they do not identify any specific issue on which additional evidence is needed. (Indeed, it is ironic that while they argue that their complaint is sufficient to give notice of what they allege, they also contend that it is insufficient to show that some of their claims are time-barred.)

**5. The Mann–Patterson Claimants have not alleged the specialized type of injury that is required under §§ 1962(a) and -(b) of RICO.** As we argued in the memorandum in support of our motion, civil claims under §§ 1962(a) and -(b) of RICO require proof of special types of injury. The Mann–Patterson Claimants' opposition memorandum makes it clear that the Mann–Patterson Claimants suffered neither kind of injury.

3

To sustain a claim under § 1962(a), the plaintiff must allege and prove "injury flowing from the defendant's *use or investment* of racketeering income."[3] "It is not sufficient to allege injury flowing from the predicate acts of racketeering."[4] Nor is it enough to show that the defendant used the racketeering income to finance its own activities and therefore to commit further acts of racketeering.[5] Rather, the plaintiff "must allege an injury from the use or investment of the racketeering income that is separate and distinct from injuries allegedly caused by the defendant's engaging in the predicate acts."[6]

The Mann–Patterson Claimants have identified no such injury here, as a sentence-by-sentence examination of their argument shows:

- *"The Complaint clearly alleges that Ellipso, Inc. (one or [sic] the criminal enterprises identified in the Complaint), stole approximately one million five hundred thousand shares of ICO stock belonging to MCHI, and converted that stock to cash which was then used to operate the criminal enterprise (Ellipso, Inc.)."*[7] This has nothing to do with any injury suffered by the Mann–Patterson Claimants. Rather, it deals with an allegedly criminal act that allegedly injured someone other than the Mann–Patterson Claimants.

---

3. *Danielson v. Burnside-Ott Aviation Training Center, Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991) (emphasis in the original).

4. *Id.*

5. *See, e.g.*, *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 896 (8th Cir. 1999); *Glessner v. Kenny*, 952 F.2d 702, 709 (3d Cir.1991), *overruled on other grounds*, *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3d Cir.1995).

6. *Fogie.*, 190 F.3d at 896. *See also Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994).

7. Mann Patterson Opp. at 6–7.

- *"Ellipso, Inc., through MCHI, then committed bankruptcy fraud to conceal the theft."* [8] Ditto.

- *"The Complaint further alleges that Plaintiffs' injuries were proximately caused by the operations and activities of the criminal enterprise, Ellipso, Inc., and its agents and employees, including its CEO, David Castiel funded by the stolen ICO stock."* [9] This sentence states only that Ellipso used the alleged racketeering income to finance its activities and that those activities injured the Mann-Patterson Claimants; there is no suggestion that those injuries flowed from the use or investment of the income itself, which is what is required.

- *"This illicit racketeering income was used to fund the "bad faith" law suit, the theft of the 881 revenues, and every other illicit activity specified in the Complaint and the Addendum."* [10] Ditto again.

What we have said with respect to § 1962(a) also applies to § 1962(b), under which the plaintiff must allege and prove that his injury resulted from the defendant's acquisition or maintenance of an interest in, or control of, an Enterprise through a pattern of racketeering activity. Thus, "plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a)[.]"[11] There must be a "'proximate causal relationship between an acquisition of an interest in an enterprise, through a

---

8. Mann Patterson Opp. at 7.

9. *Id.*

10. *Id.*

11. *Danielson*, 941 F.2d at 1230–31.

5

pattern of racketeering activity or with income derived therefrom, and the damages claimed by [plaintiff.]'"[12] The Mann–Patterson Claimants have identified no such injury; they allege only that they were injured by Ellipso's alleged racketeering activity, not by Ellipso's use of such activity to acquire or maintain an interest in, or control of, an Enterprise.

**6. The opposition seeks to expand the unjust-enrichment count beyond what they alleged in the complaint and the "Addendum."** The Mann–Patterson Claimants contend that their unjust-enrichment claim encompasses the allegations regarding the alleged theft of the MCI/Verizon contract opportunity. But neither the complaint nor the "Addendum" supports that contention.

What the unjust-enrichment count alleges is that Ellipso was unjustly enriched because it "took and retains moneys and services received from Plaintiffs . . . without commensurate compensation to Plaintiffs."[13] The opportunity to enter into a contract with MCI was neither money that Ellipso received nor services that Ellipso received. It was a business opportunity, and the unjust-enrichment count in the complaint said nothing about business opportunities. Nor did the "Addendum" to the Mann–Patterson Claims say anything to suggest that the unjust-enrichment claim included the alleged theft of this opportunity.

After the Mann–Patterson Claimants' repeated disobedience of the Court's orders to provide information about the bases for their claims, and their repeated failure to

---

12. *Id.* (quoting *Old Time Enterprises, Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1219 (5th Cir. 1989).

13. Draft Compl. ¶¶ 237–38; Compl. (as filed) ¶¶ 257–58.

comply with court-ordered deadlines, they cannot inject new matters into this proceeding, well beyond the bar date for filing claims.

**7. The Mann–Patterson Claimants have not made any substantial arguments in support of their claim for malicious prosecution.** To begin with, the opposition does not respond to our argument regarding the issue of probable cause. That failure is, in and of itself, sufficient to deny the claim.

Instead, they devote all their attention to the issue of special damages, but their arguments fall flat.

The Mann–Patterson Claimants argue that a wide range of compensatory damages is available for malicious prosecution.[14] But that is beside the point. The question here is not what kind of damages may be recovered once liability for malicious prosecution is established, it is whether such liability can be established without satisfying the threshold requirement of special injury. The cases cited by the Mann–Patterson Claimants confirm that the answer to this question is "no." In each case, either the requirement of special injury was recognized in the opinion or it was satisfied on the facts before the court.

The Mann–Patterson Claimants point to the preliminary injunction that was issued in the District Court Action as a seizure of property that amounted to special damage. But they do not respond to our arguments (a) that only Mann Technologies has standing to complain about that seizure, and (b) that Mann Technologies has already been awarded compensation for the seizure.

---

14. Opp. at 7–8.

7

Next, the Mann–Patterson Claimants argue that Ellipso's alleged acts of malicious prosecution involved the filing of multiple lawsuits.[15] But the proceedings they describe as constituting "multiple suits" are really nothing but separate stages in a single action: the complaint, the preliminary-injunction motion, the appeal from the preliminary injunction, and the appeal from the ultimate dismissal of Ellipso's claims. These are hardly "separate lawsuits," as they allege.

The Mann–Patterson Claimants' third argument is that in requiring plaintiffs suing for malicious prosecution to prove special injury, the District of Columbia is following a rule that other jurisdictions have rejected. Perhaps so, but what difference does that make? This Court must apply D.C. law as it exists, regardless of what other jurisdictions might say.

The Mann–Patterson Claimants also invoke the exception to the special-injury requirement for cases in which "'a party . . . unfairly sustain[s] economic injury beyond that which is normally incidental to defending a lawsuit.'"[16] But their own argument in support of this point makes it clear that the alleged injury they seek recovery for resulted at least in part from conduct by Ellipso other than its alleged malicious prosecution. Specifically, they describe their injuries as including "harassment, . . . concealment of moneys stolen from them, perpetration of racketeering (mail fraud, wire fraud, Hobbs Act violations, etc.), [and] bankruptcy fraud[.]"[17] Given that wide variety of alleged torts, it is not surprising that the Mann-Patterson Claimants claim to have suffered "injury beyond

---

15. Opp. 9.

16. Opp. at 10 (quoting *Joeckel v. Disabled American Veterans*, 793 A.2d 1279, 1283 (D.C. 2002)).

17. Opp. at 10.

what is normally incidental to defending a lawsuit." But the question here is not simply whether they suffered such injury, but whether they suffered it *because of Ellipso's lawsuit.* The Mann–Patterson Claimants' own arguments indicate that the answer is no.

Finally, the Mann–Patterson Claimants argue that they should be exempted from the special-injury requirement because the cases in which that requirement has been applied have involved "run of the mill" lawsuits whereas the District Court Action was "extraordinary." However, there is no authority for drawing lines based on the inherently subjective determination of whether a particular lawsuit is extraordinary rather than run of the mill.

**8. The Mann–Patterson Claimants' abuse-of-process argument is based on the mistaken premise that the ruling in *Whelan v. Abell*[18] accurately represents D.C. law.** We showed in the memorandum supporting our motion that *Whelan* is not an accurate statement of D.C. law.[19] The Mann–Patterson Claimants ignore that discussion entirely.

**9. The Mann–Patterson Claimants' argument regarding their defamation claims confirms that they asserted the claims without any good-faith basis.** The Mann-Patterson Claimants have finally identified a specific statement that they contend is defamatory, but it is one that they did not learn about until less than a month ago. That statement is the one referred to by Kermit Rosenberg in his testimony at the May 18 hearing on Butzel Long Tighe Patton's fee-application hearing. But having previously failed to identify any specific defamatory statements (thereby showing that they asserted

---

18. 953 F.2d 663 (D.C. Cir. 1992).

19. Debtors' Mem. at 28–30.

9

the defamation claim without any factual basis) the Mann–Patterson Claimants should not be allowed to rely on this newly-discovered statement (which in any event referred only to Patterson).

Moreover, the statement by Dr. Castiel that Mr. Rosenberg testified about is absolutely privileged. The District of Columbia follows the universally accepted rule that "[s]tatements made in the course of judicial proceedings are protected by absolute immunity from defamation suits[,]" and that immunity extends to "statements made for the purpose of preparing for litigation."[20] This includes out-of-court statements by a client to his attorney, as long as the statement is related to an existing or anticipated judicial proceeding.[21] Finally, Mr. Rosenberg's testimony itself is irrelevant, since it took place post-petition, and in any case it is protected by the same privilege that protects Dr. Castiel's statement.

\* \* \*

As noted above, the remaining points in the Mann–Patterson Claimants' opposition require no response, as they lack even the pretense of substance. Taken as a whole, the opposition makes it abundantly clear that the Mann–Patterson claims are not even arguably meritorious.

Respectfully submitted,

/s/ Kermit A. Rosenberg
Kermit A. Rosenberg (D.C. Bar No. 219089)

---

20. *Armenian Assembly of America, Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 139 (D.D.C. 2009). *See also, e.g.*, *Marsh v. Hollander*, 339 F. Supp. 2d 1, 6 (D.D.C. 2004); *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 338 (D.C.2001).

21. *See Marsh*, 339 F. Supp. 2d at 6, 7–8.

>Neal Goldfarb (D.C. Bar No. 337881)
>Butzel Long Tighe Patton, PLLC
>1747 Pennsylvania Avenue, N.W., Suite 300
>Washington, D.C. 20006-4604
>Telephone: 202.454.2800
>Facsimile:  202.454.2805
>krosenberg@butzeltp.com
>ngoldfarb@butzeltp.com
>*Counsel for Debtor*

**Certificate of Service**

I hereby certify that on June 4, 2010, true copies of the foregoing reply were served upon the following by first-class U.S. mail, postage prepaid:

>Ellipso, Inc.
>c/o David Castiel
>4410 Massachusetts Avenue, NW
>Suite 385
>Washington, DC  20016
>
>Martha L. Davis, Esq.
>Office of the United States Trustee
>115 S. Union Street, Room 210
>Alexandria, VA 22314
>
>Wendell W. Webster, Esq.
>Linda Correia, Esq.
>Webster, Frederickson, Correia & Puth, PLLC
>1775 K Street, N.W., Suite 600
>Washington, D.C. 20006
>
>Robert B. Patterson
>c/o John B. Mann
>9330 Harts Mill Road
>Warrenton, Virginia 20186
>
>Ronald B. Patterson, Esq.
>P.O. Box 1756
>Alexandria, VA 22313

John B. Mann
9330 Harts Mill Road
Warrenton, Virginia 20186


    /s/ Kermit A. Rosenberg
Kermit A. Rosenberg