**The Memorandum Decision below is hereby signed.**

**Dated: January 19, 2012.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ELLIPSO, INC., | ) | Case No. 09-00148 |
| | ) | (Chapter 11) |
| Debtor. | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION RE MOTION TO RECONSIDER

The creditor John Page has filed an *Amended Motion for Partial Reconsideration of "Memorandum Decision Regarding Applications for Approval of Compensation by Counsel for Debtor."* (Dkt. No. 1338). At the December 7, 2011 hearing on his motion, Mr. Page went through a lengthy recitation of 21 points of disagreement with the court's October 24, 2011 *Memorandum Decision Regarding Applications for Approval of Compensation by Counsel for Debtor* ("Decision"). In that decision, the court granted in part and denied in part the application for compensation by counsel for the debtor, Butzel, Long, Tighe, Patton, LLC ("Tighe Patton"). The Decision gives a detailed account of the events leading up to the application for compensation, and it will not be repeated here.

The court will treat Mr. Page's motion as a Rule 59(e) motion to alter or amend a judgment. *See Piper v. U.S. Dep't of Justice*, 312 F. Supp. 2d 17, 20 (D.D.C. 2004) ("The D.C. Circuit has stated that motions to reconsider are routinely construed as motions to clarify or alter or amend judgment under Rule 59(e).") Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (incorporated in Bankruptcy by Fed. R. Bankr. P. 9023), a party may submit a motion to alter or amend a judgment after its entry. The disposition of a Rule 59(e) motion is within the court's discretion. *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004). The court may grant a motion to alter or amend a judgment when it finds that there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*per curiam*); *In re GB Herndon Assocs., Inc.*, 459 B.R. 148, 153 (Bankr. D.D.C. 2011). However, the "amendment of a previous order is an unusual measure," *Fox v. American Airlines, Inc.*, 295 F. Supp. 2d 56, 59 (D.D.C. 2003), and "relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).

I

Mr. Page argues that Tighe Patton's fee application should

be denied for impermissible conflicts under § 327 and § 328 of the Bankruptcy Code (11 U.S.C.), because during the time Tighe Patton represented the debtor in possession, Ellipso, they were actually representing David Castiel in his personal capacity and putting Dr. Castiel's interests before the estate's interests. Mr. Page alleges that the supplemental disclosure (Dkt. No. 545) shows that Tighe Patton was representing Dr. Castiel in his personal capacity.  Along these same lines, Mr. Page argues that since Tighe Patton was representing Virtual Geosatellite Holdings, Inc. ("VGHI") while VGHI was not in good standing, then Tighe Patton was actually representing the sole officer of VGHI, Dr. Castiel.

   Mr. Page has not come forward with evidence that Tighe Patton represented Dr. Castiel in his personal capacity.  At the May 18, 2010 hearing, Mr. Page handed Mr. Rosenberg a copy of the supplemental disclosure and asked him to clarify who Tighe Patton represented.  Mr. Rosenberg testified that Dr. Castiel was involved in the cases listed on the supplemental disclosure only as an officer of the related entities, and that Tighe Patton's representation of Dr. Castiel was limited to his official capacity.  The court credits Mr. Rosenberg's testimony on this issue.  Furthermore, the Decision thoroughly addresses the concern that "Tighe Patton's prior representation of Dr. Castiel has caused it to place his interest above the interest of the

3

estate." Decision at 13; *see also* Decision at 17-18.

Mr. Page's argument that representing a corporation not in good standing amounts to representing the officer of that corporation in his personal capacity has no merit. It is clear from the testimony and disclosures that Tighe Patton believed it was representing VGHI. If VGHI was not in good standing at that time, then Tighe Patton was representing a corporation not in good standing. Mr. Page offers no legal reasoning to explain how representing a corporation not in good standing equates to representing an officer of the corporation in his personal capacity.

II

Mr. Page asserts that Tighe Patton's representation of VGHI and Mobile Communications Holdings, Inc. ("MCHI") created a conflict of interest because VGHI and MCHI have actual, concealed claims against Ellipso. First, he alleges that Tighe Patton's previous representations of VGHI and MCHI required a waiver. Second, he asserts that Ellipso paid VGHI's legal bills, so VGHI owes Ellipso money, and this claim creates an adverse interest between VGHI and Ellipso. Third, he alleges that he discovered an agreement between VGHI and Ellipso that was never cancelled and pursuant to which VGHI owes $4.6 million to Ellipso. According to Mr. Page, this creates another adverse interest between VGHI and the debtor that was not disclosed, and that the

4

court failed to consider in its Decision.

I will first consider Mr. Page's argument that VGHI and MCHI were required to waive any conflicts of interest. Dr. Castiel stated in open court that he waived all conflicts of interest. The issue is whether he was in a position to waive conflicts of interest on behalf of VGHI and MCHI and whether it was clear that he was being asked to waive on behalf of those corporations. However, I need only reach those issues if a conflict of interest exists.

Mr. Page has not shown that Tighe Patton represented VGHI or MCHI with respect to any alleged adverse interest. As explained in the Decision, "a party objecting to an application for compensation on the basis of a conflict of interest bears the burden of establishing the conflict." Decision at 15 (quoting *In re Leslie Fay Companies, Inc.*, 222 B.R. 718, 721 (S.D.N.Y. 1998)). It is not enough to point to an alleged adverse interest of the represented party; Mr. Page must come forward with evidence that Tighe Patton represented VGHI or MCHI with respect to the adverse interest. 11 U.S.C. §§ 327(c) and 328(c).

Mr. Page has failed to introduce any evidence that Tighe Patton represented VGHI with respect to any adverse interest. The Decision has already examined this argument, and explained that the "Bankruptcy Code does not bar the representation of an entity with an interest adverse to the estate but, rather, the

5

representation of an interest adverse to the estate." Decision at 19. Mr. Page has not met his burden of showing that Tighe Patton represented VGHI with respect to any alleged debt owed to Ellipso. *See* Decision at 18-19. Thus, there is no conflict that VGHI needed to waive.

Mr. Page argues that Tighe Patton was precluded from representing Ellipso because Ellipso and MCHI hold adverse interests, and Tighe Patton previously represented MCHI. Mr. Page contends that the adverse interest stems from MCHI's claim against Ellipso related to the settlement proceeds from the ICO Global settlement in 2008. However, at the December 7, 2011 hearing, Tighe Patton clarified that the law firm had no connection to the ICO Global litigation or settlement, and the record of the May 18, 2010 hearing bears that out. As a result, the court was mistaken in stating that Tighe Patton represented Ellipso and MCHI in the lawsuit that ended with the ICO Global settlement. Decision at 20. Therefore, insofar as Mr. Page alleges that Ellipso and MCHI have adverse interests arising from the ICO Global settlement, there is no conflict with Tighe Patton's representation of Ellipso, because Tighe Patton was not involved in the ICO Global litigation. As this is the only adverse interest of MCHI that Mr. Page has put forth, there is no conflict and no need for a waiver by MCHI. Consequently, this argument is not a ground for altering or amending the court's

ruling.

### III

Mr. Page objects to the Decision's reliance on *In re Global Marine, Inc.*, arguing that it is not applicable because Ellipso's potential claim against VGHI is not an "intercompany claim" as the term was used in that case.  108 B.R. 998 (Bankr. S.D. Tex. 1987).  Mr. Page's reasons for distinguishing the case are not clear to the court.  In that case, the court explained its use of the term "intercompany" at the beginning of the decision: "GMI [the parent holding company of the debtors] and its subsidiaries, including certain non-debtor subsidiaries, appear to owe one another approximately $1 billion dollars or more in so-called intercompany debt."  108 B.R. at 1001.  Mr. Page has not articulated why this use of "intercompany" does not apply to an alleged claim of Ellipso against VGHI.

### IV

Mr. Page contends that Tighe Patton should be denied compensation for misfeasance because it submitted a false disclosure statement with Ellipso's chapter 11 plan.  Mr. Page claims that the disclosure statement is false for three reasons: first, because Tighe Patton did not disclose Mr. Page's higher and better offer; second, because the disclosure statement represented that there was money in an escrow account to go forward and fund the plan when there was not; and third, because

7

the disclosure statement did not disclose the liabilities between MCHI and the debtor and VGHI and the debtor.

With respect to the first two claims of misfeasance, the court has already addressed these arguments in its Decision. *See* Decision at 8, 23-26, 25 n.8. Mr. Rosenberg testified that the plan that was filed was subject to higher and better offers and that Mr. Page (or anyone else) could make such an offer thereby mooting any necessity to discuss Mr. Page's offer (which Mr. Rosenberg doubted was actually a better offer). Mr. Rosenberg also testified that the $600,000 was never posted because it was to be posted upon approval of the disclosure statement, which never happened. As to the third claim, Mr. Page has merely put forth a speculative argument that there is liability between VGHI and the debtor and MCHI and the debtor. Because there is significant uncertainty about any claims between these two entities and the debtor, it cannot be said that failing to include the alleged claims in the disclosure statement amounts to a misrepresentation. Moreover, the debtor withdrew its proposed plan and disclosure statement (Dkt. No. 357).

V

Mr. Page takes issue with Mr. Rosenberg's testimony that Mr. Page's offer was "constantly changing in the days leading up to the deadline for the debtor to file his plan." Decision at 24-25. Whether or not Mr. Rosenberg's characterization of Mr.

Page's offer is completely accurate does not alter my finding that "I cannot say that in opting for Dr. Castiel's offer Tighe Patton did not provide a benefit to the estate."  Decision at 25.  Even if I were to accept that Mr. Page's offer was not constantly changing, my conclusion that opting for Dr. Castiel's offer provided a benefit to the estate would not change.  Therefore, this argument does not provide a basis for granting relief under Rule 59(e).

VI

Mr. Page objects to the portion of the Decision which states: "In light of the fact that Tighe Patton actually filed the objection to the Mann Plan and in light of the fact that I ultimately agreed with its contentions, I do not find that the fees it seeks with respect to the objection were not of benefit to the estate."  Decision at 27.  Mr. Page contends that the Decision cannot take into account events that occurred after the May 18, 2010 hearing.  Nonetheless, in his testimony at that hearing, Mr. Rosenberg articulated reasons why it was appropriate to object to the Mann Plan.  Neither the evidence at the hearing nor the court's eventual ruling support the claim that the objection to the Mann Plan was not beneficial to the estate.

VII

Mr. Page argues that Tighe Patton did not make reasonable inquiries as required by Rule 9011(b).  In support, he argues

9

that Tighe Patton did not question anything in Dr. Castiel's interest, and, in particular, Tighe Patton failed to object to Dr. Castiel's claim even though there was a large discrepancy between Dr. Castiel's proof of claim and his scheduled claim. He argues that Tighe Patton did not "ably administer[] the case." Decision at 34. He cites *In re Taylor*, 655 F.3d 274 (3d Cir. 2011), for support.

Though Mr. Page couches his argument as a violation of Rule 9011, he has not asserted that Tighe Patton made any representation to the court as to Dr. Castiel's claim that was not formed after a reasonable inquiry; rather, he contends that Tighe Patton should have investigated and objected to Dr. Castiel's claim. It appears that he is arguing that, as result of the lack of inquiry, Tighe Patton's services were not beneficial to the estate and they should be denied compensation.

At the May 2010 hearing, Robert Patterson specifically asked Mr. Rosenberg why Tighe Patton had not objected to Dr. Castiel's proof of claim. Mr. Rosenberg explained that the discrepancy in the amount claimed did not raise any questions in his mind about the veracity of the claim, but rather indicated that Dr. Castiel disagreed with the amount that was scheduled and thus he filed a proof of claim. He further explained that it was premature at that time to investigate Dr. Castiel's claim, and that once things settled down, they would have looked at the transactions

and dealings of all insiders of the debtor.  "That the debtor might have been selective in choosing which objections to pursue first does not mean those that it did pursue were wasted efforts."  Decision at 29.  The objections the debtor did pursue were beneficial to the estate, and I find Mr. Rosenberg's testimony credible as to why Tighe Patton did not immediately object to Dr. Castiel's proof of claim.

## VIII

Mr. Page alleges that in allowing Tighe Patton's fees, the court has overlooked the fact that Neal Goldfarb knew there were issues that had not been disclosed in the Rule 2014 statement.  He alleges that Mr. Goldfarb knowingly failed to disclose certain matters, and that the court should find that Mr. Goldfarb's conduct amounted to gross negligence and should sanction him personally.  Mr. Page, however, presents no evidence that Mr. Goldfarb participated in the filing of the Rule 2014 disclosures.  Mr. Page's argument rests on his subjective belief that Mr. Goldfarb must have known, because he attended hearings and had involvement in his firm's representations of actual and potentially conflicting interests.  In the Decision, I fully addressed the issue of the piecemeal nature of Tighe Patton's disclosures and the factors I relied on in determining whether to disallow fees.  Decision at 29-36.  Mr. Page's argument adds nothing new to that discussion, and does not alter this court's

decision as to disallowing fees.

IX

Mr. Page argues that the court should have added § 327 on page 13 of the Decision, where it states: "The creditors challenge Tighe Patton's fee applications on three broad bases: impermissible conflicts under § 328 . . . ." Decision at 13. Since the Decision carefully analyzed both § 328 and § 327 on the subsequent pages, Mr. Page's argument amounts to mere disagreement with the wording of a sentence, rather than an argument for why the court's ruling should be altered or amended.

X

Mr. Page alleges that Mr. Rosenberg first became aware of Tighe Patton's representation of VGHI and MCHI when Mr. Patterson filed the *Sahagan* settlement agreement, not on the filing of the creditors' objection to Tighe Patton's first application for compensation. Mr. Rosenberg testified that he first learned of Tighe Patton's representation of VGHI and MCHI on the filing of the creditors' objection to the first application for compensation, and the court credits Mr. Rosenberg's testimony.

XI

Mr. Page correctly asserts that the Decision fails to deal with Mr. Page's contention that Tighe Patton made unauthorized payments to Linda Awkard. However, his argument has no merit. Ellipso was directed to transfer a $10,000 retainer to Ms. Awkard

12

upon approval of her application to be employed as counsel to the debtor in possession (Dkt. Nos. 75, 139).  Ellipso asked Tighe Patton to release its security interest in $10,000 of Tighe Patton's retainer for that purpose.  Tighe Patton did so, and those funds became property of the debtor in possession.  Tighe Patton, at Ellipso's direction, transferred those funds to Ms. Awkard.  No authorization was required for Tighe Patton to release its security interest.

XII

Mr. Page argues that Tighe Patton acted improperly in assisting Mark Zaid, a creditor, in making filings with this court.  However, at the time Tighe Patton worked for Mr. Zaid, the firm was no longer counsel to the debtor in possession. Therefore, there was no issue of disinterestedness under § 327 or § 328.

XIII

"A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled." *State of New York v. U.S.*, 880 F. Supp. 37, 38 (D.D.C. 1995).  With limited exceptions, Mr. Page's 21 points are simply a rehash of arguments he has already made and this court has already disposed of.  It is clear that Mr. Page disagrees with the court's Decision and is disappointed with the result. However, "a motion to reconsider must establish more than simply

13

the [party's] continued belief that the court's decision was erroneous." *Id*. at 39.  Mr. Page's motion to reconsider "merely constitutes an inappropriate attempt to reargue [his] initial motion and does not form a proper basis for reconsideration." *Fox*, 295 F. Supp. 2d at 60.  There has been no intervening change in controlling law, Mr. Page has not shown the availability of new evidence that would alter this court's ruling, and Mr. Page has not demonstrated clear legal error or manifest injustice in the court's ruling.

For all of the reasons discussed, I will deny Mr. Page's motion to reconsider.  A separate order follows.


                                            [Signed and dated above.]



Copies to: John Page, debtor, debtor's counsel, Ch. 11 trustee,
U.S. Trustee, recipients of e-notification.