**The document below is hereby signed.**

**Dated: March 8, 2012.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
            UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF COLUMBIA
```

In re                          )
                               )
ELLIPSO, INC.,                 )   Case No. 09-00148
                               )   (Chapter 11)
            Debtor.            )   **Not for Publication in**
                               )   **West's Bankruptcy Reporter**

```
       MEMORANDUM DECISION RE JOHN PAGE'S
   MOTION FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM
```

Before the court is John Page's motion to allow an administrative claim of $110,400 for postpetition services to the debtor.  He contends that he is entitled to: (i) $2,000 for each of the months of March, April, and June 2009, reflecting the salary increase he would receive under section 2(b) of his employment agreement dated January 16, 2006 ("Employment Agreement") if "Commercial Service" were obtained; (ii) $96,000 in severance pay; (iii) $8,000 for his services rendered during the month of June 2009; (iv) and $400 in business expenses incurred during March through June 2009.  A series of hearings were held on this motion during January and February 2012.

The pertinent facts are as follows.  Page continued to work for Ellipso, Inc. ("Ellipso") after Ellipso filed its chapter 11

petition. Page received $18,000 for his postpetition services ($6,000 per month for each of March, April, and May 2009). He did not receive any compensation for June 2009. Page alleges that he stopped working for Ellipso on or about June 30, 2009.[1] It is clear that Ellipso did not assume Page's prepetition Employment Agreement. No written motion to assume the Employment Agreement was ever filed by the debtor in possession. Moreover, 11 U.S.C. § 365(a) requires court approval in order for a prepetition contract to be assumed, and such approval was never granted.[2] Contrary to Page's argument, an executory contract may not be assumed by implication, because the court's approval of the assumption is required. *Mason v. Official Committee of Unsecured Creditors (In re FBI Distrib. Corp.)*, 330 F.3d 36, 45 (1st Cir. 2003).

Pursuant to 11 U.S.C. § 503(b)(1)(A)(i), "the actual, necessary costs and expenses of preserving the estate, including – (i) wages, salaries, and commissions for services rendered after the commencement of the case" are an allowable administrative expense. "[A]n expense is administrative only if

---

[1] For purposes of this motion, it is unnecessary to address whether Page resigned or was terminated.

[2] 11 U.S.C. § 365(a) provides: "Except as provided in section 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) (quoting *Trs. of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98 (2d Cir. 1986)). An administrative expense claim for postpetition wages is entitled to priority status under 11 U.S.C. § 507. The party claiming an administrative expense claim bears the burden of proof. *Nat'l Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 838 (6th Cir. 2010). Furthermore, the provisions regarding priority claims under § 503(b) are strictly construed. *In re Commercial Fin. Servs., Inc.*, 246 F.3d 1291, 1293 (10th Cir. 2001).

Even though Ellipso did not assume Page's Employment Agreement, he is still entitled to be compensated on a quantum meruit basis for the services he rendered postpetition:

> If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which depending on the circumstances of a particular contract, may be what is specified in the contract.

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L. Ed. 2d 482 (1984)(internal citations omitted).

I. Commercial Service

Section 2(b) of the Employment Agreement provided for a revised salary, generating an additional $2,000 per month for Page, if "Commercial Service" was achieved (Exhibit AA). Page alleges that he is owed $2,000 per month for each of the months of March, April, May, and June 2009, because "Commercial Service" was achieved. The $2,000 per month bonus, however, was contingent on there not having been a consecutive two-month lapse in "Commercial Activity" (a specified level of revenues). In an oral decision of March 7, 2012 addressing Page's claim for the $2,000 monthly bonus as part of an asserted priority claim, the court ruled that even if, as contended by Page, "Commercial Service" had been achieved in January 2008, there had been two or more consecutive months in which "Commercial Activity" had not been achieved, thus making Page ineligible for the $2,000 per month bonus.[3]

If the Employment Agreement had been assumed by the debtor in possession, Page would be entitled to an administrative expense claim for the amount owed to him under the terms of the contract. *In re FBI Distrib. Corp.*, 330 F.3d at 42. The contract was not assumed, which leaves Page with an administrative claim only to the extent of the reasonable value

---

[3] Although it was a closer issue, the court also ruled that "Commercial Service" had not been achieved.

4

of the services he provided to the debtor in possession. *Id.* at 43. The terms of the contract do not determine the amount of the priority claim. *In re Kaber Imaging, Inc.*, 262 B.R. 187, 189 (Bankr. D.N.H. 2001). Thus, Page's claim that he is entitled to a $2,000 bonus for each month he worked for the debtor in possession amounts to a claim that the reasonable value of the services he rendered postpetition was $2,000 more per month than what he has already been paid for his postpetition services, and $2,000 more per month than his prepetition salary rate.

Page has not met his burden of proving that the value of his postpetition services was $8,000 per month. *In re Am. Plumbing & Mech., Inc.*, 323 B.R. 442, 462 (Bankr. W.D. Tex. 2005) (explaining that "the burden of proof as to the reasonable value of services rendered to the estate lies with the claimant.") Page claims in his motion that "Commercial Service" was achieved in January 2008, but, tellingly, he did not assert he was entitled to the $2,000 salary increase until he filed his proof of claim over a year later, in April 2009. During the entire year 2008, his salary continued at $6,000 per month. He agreed to keep working for Ellipso for $6,000 per month without demanding more, thus tacitly acknowledging the $6,000 value of his services. There is nothing in the record to support the assertion that the reasonable value of his services postpetition was $2,000 more per month than his prepetition salary rate. *See*

*In re Bernard Techs., Inc.*, 342 B.R. 174, 179 (concluding that the claimant's postpetition services could not be reasonably valued "at a rate more than three times the amount the Debtor paid for those same services immediately prior to its chapter 11 filing.") Consequently, Page has not shown that his postpetition services should be valued at $8,000 per month.

## II. Severance Pay

Section 7(d) of Page's Employment Agreement states that for termination without cause or with good reason, the company will pay the employee his then current salary "for one year from the Termination Date . . . or until the Term of this agreement, whichever is longer." Page ceased working for the debtor in possession on June 30, 2009. Page argues that he is entitled to an administrative priority claim for severance pay in the amount of $96,000. Ellipso argues that Page was not terminated, but rather he resigned, or, in the alternative, that the Employment Agreement expired on its own terms. The court need not determine whether Page was terminated or whether the Employment Agreement expired, because even assuming the Employment Agreement was still in effect at the date of filing the petition for relief and that Page was terminated in June, Page's severance pay claim is not entitled to administrative expense priority.

The consideration supporting Page's claim for severance pay was supplied prepetition, when he signed the Employment Agreement

6

in 2006.  The severance pay term was not linked to Page's length of service, and thus it was not part of his compensation "for services rendered."  11 U.S.C. § 503(b)(1)(A)(i).  No matter the length of time Page worked for Ellipso after signing the Employment Agreement, he was entitled to the same amount of severance pay.  *See In re FBI Distrib. Corp.*, 330 F.3d at 46-47 (determining that where severance benefits are not "geared to length of service," they are not part of the compensation for services rendered.)  Since severance pay was not part of his compensation for services rendered, no part of his severance benefits could have been earned postpetition.  Therefore, the claim for severance pay is not entitled to administrative priority status.

### III. June Pay

Page did not receive any compensation for June 2009 and argues that he is entitled to $8,000 for his work during that month.  The question facing the court is the extent to which Page's services rendered in June 2009 were beneficial to the estate and thus an actual, necessary cost of preserving the estate.

As evidence that Page did not provide services that benefitted the debtor in June 2009, Ellipso submitted all of the e-mails sent from John Page to David Castiel during the postpetition period.  The e-mails during March, April, and May

7

2009 deal primarily with business matters, but starting at the very end of May and continuing through June, the bulk of Page's e-mails to Castiel discuss a reorganization plan proposed by Castiel and Page that would be funded by a Mr. Garland Harris.

The evidence shows that Page pursued this reorganization plan and funding opportunities in his personal capacity, not as an employee of Ellipso. Page testified that he and Castiel met with Mr. Rosenberg, counsel for Ellipso, who advised them that they could propose a plan provided their work on the plan was conducted in their individual capacities. In an e-mail dated June 30, 2009 to Dan Sullivan, Page writes: "My offers to fund Ellipso's reorganization plan were done under my own hand, not in my capacity as an employee of Ellipso" (Exhibit ZZ). The debtor asserts that Page should not be compensated for the time spent pursuing his own reorganization plan.

Page, however, continued to provide beneficial services to the estate in June 2009. There are e-mails showing that he worked on a blockage issue with a Verizon account, that he continued to search for opportunities for Ellipso, such as with Worldwide Associates, and that he monitored the satellite media to keep track of what was happening in the industry, an activity Page testified was one of his postpetition duties. As late as June 26 and June 29, Page sent a series of e-mails about meeting with a potential investor.

In addition, the estate paid for Page's health insurance benefits through June 16, 2009. *See* Exhibit ZZ, June 11, 2009 e-mail sent at 11:25 PM from David Castiel. The health benefits ceased after June 16, 2009 only because the debtor in possession no longer had the funds to pay for them. This is evidence that the debtor in possession continued to treat Page as an employee until the end of June 2009.

Moreover, the e-mails in evidence, including the ones pertaining to Page's personal plan of reorganization, were sent to Castiel, the CEO of the debtor in possession. Clearly, the debtor in possession knew that Page was devoting time to working on his own plan, but there is no evidence that the debtor in possession objected to this use of Page's time. It may be inferred that the debtor in possession acquiesced in Page's devoting less than full time to his employee duties (versus spending time developing his plan), and valued his being on board as an employee.

The e-mails concerning Page's plan of reorganization simply show that Page was working on his own offer to fund the debtor during June 2009. They do not show that Page worked on his own plan at the expense of his duties as an employee of the debtor in possession. The debtor in possession did not complain about the time Page spent working on his plan, and Page continued to provide the same beneficial services to the company that he

9

provided in the months of March, April, and May 2009, and for which he was compensated. As a result, the court determines that Page is entitled to an administrative priority claim for the reasonable value of his services rendered in June 2009.

### IV. Quantum Meruit

Page must receive the reasonable value of his services provided for June 2009. *See NLRB v. Bildisco and Bildisco*, 465 U.S. at 531. The amount specified in Page's Employment Agreement is probative of the reasonable value of his services, but is not dispositive. *In re FBI Distrib. Corp.*, 330 F.3d at 44; *In re Native Am. Sys., Inc.*, 368 B.R. 75, 80 (Bankr. D. Colo. 2006); *In re Kaber Imaging, Inc.*, 262 B.R. at 190. As previously discussed, Page has not shown that the reasonable value of his services was $8,000 per month. Alternatively, he argues that since he is entitled to be compensated on a quantum meruit basis, he should be compensated at his consulting rate of $200 per hour.

The court finds that Page did not sufficiently show that his June 2009 services can be reasonably valued at his consulting rate. The most probative evidence of the reasonable value of his services is the amount specified in his Employment Agreement, or $6,000 per month. This is the amount of monthly compensation he was entitled to while working for the debtor prepetition. *See In re Bernard Technologies, Inc.*, 342 B.R. 174, 178 (Bankr. D. Del. 2006) (looking to the claimant's actual salary history with the

debtor to determine the probative value of the employment contract).

This is also the monthly compensation he received for each of the other months he worked postpetition (March, April, and May of 2009). Ellipso has not challenged the $6,000 per month compensation rate for these three months, arguing instead that he is not entitled to more than the $18,000 paid. Thus, the debtor placed $6,000 per month as the value of Page's being on tap to provide employee services, and that is evidence of the quantum meruit value of his continuing to serve as an employee of the company until June 30, 2009. While there may have been less work for him to do in June, Page made his employee services available to the debtor in possession for the entire month, and, based on the compensation rate for the preceding months of postpetition work, the debtor in possession valued these services at $6,000.

The court concludes that the reasonable value of Page's services rendered in June 2009 should be calculated using the $6,000 per month figure found in the Employment Agreement, which is also the rate at which he was paid both prepetition and postpetition. Page should be treated as having provided beneficial services to the estate for all of June 2009, and the debtor continued to utilize his services during that period after effectively agreeing (based on salary payments in earlier months) to compensate him at $6,000 per month. Consequently, Page is

entitled to an administrative expense claim in the amount of $6,000.

## V. Business Expenses

In his motion, Page asserts a claim for business expenses incurred postpetition.  Page submitted no evidence of postpetition business expenses and, therefore, the administrative claim as to business expenses is denied.

## VI. Conclusion

For the reasons discussed, Page's motion to allow an administrative expense priority claim is granted in part and the objections thereto are sustained in part.  Page is entitled to an administrative claim under § 503(b)(1)(A) in the amount of $6,000.  A separate order follows.

[Signed and dated above.]

Copies to: John Page; David Castiel; Debtor's attorney; Recipients of e-notification.