The document below is hereby signed.

Dated: September 25, 2012.



S. Martin Teel, Jr.
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
ELLIPSAT, INC., formerly       )    Case No. 09-00148
known as ELLIPSO, INC.,        )    (Chapter 11)
                               )    Not for Publication in
                    Debtor.    )    West's Bankruptcy Reporter

<u>MEMORANDUM DECISION RE JOHN PAGE'S SECOND AMENDED PROOF OF CLAIM</u>

Before the court is John Page's claim for $72,000 in

severance pay, $10,950 of which he asserts is entitled to

priority under 11 U.S.C. § 507(a)(4) as "wages, salaries, or

commissions, including vacation, severance, and sick leave pay"

earned within 180 days before the date of the filing of the

petition (Claim No. 1-3 on the Claims Register) and Page's *Motion*

*to Allow Second Amended Pre-Petition Claim of John H. Page* (Dkt.

No. 1639).[1]

---

[1]  Claim No. 1-3 is for $138,400, which is composed of
$66,400 plus $72,000.  The court previously allowed a portion of
this claim—Page's pre-petition claim for $66,400—as an unsecured
claim against the estate of Ellipso, Inc.  *See Order Overruling*
*Objection of David Castiel to John Page's Original Claim* (Dkt.
No. 1548).  The balance of the claim ($72,000 for severance pay)
is what is now before the court.  *See also Order Granting Motion*
*of Proponents of Joint Plan for Expedited Partial Ruling and/or*
*Estimation of Amended Claim of John Page* (Dkt. No. 1594).

David Castiel filed an objection to Page's claim (Dkt. No.
1659).  However, at the hearing on June 13, 2012, the court
sustained Page's objection to David Castiel's standing to object
to the claim.  Additionally, the court ruled that the reorganized
debtor, Ellipsat, Inc., had standing to object, and, through its
attorney, David Wilson, Ellipsat decided to pursue Castiel's
objection.

## I. Background

John Page signed an employment agreement with the debtor,
Ellipso, Inc., now known as Ellipsat Inc., on January 16, 2006.
Section 7 of that agreement provides:

> (d) <u>Termination without Cause or with Good Reason</u>.
> If (i) in breach of this Agreement, the Company shall
> terminate the Employee's employment other than (A) for
> Cause or (B) because of Death or Disability or (ii) the
> Employee shall terminate his employment for Good Reason;
> then:
>
> . . . .
>
> (2) The Company shall pay Employee as severance
> pay, and in lieu of any further salary payments
> hereunder for periods after the Termination Date,
> the Employee's then current salary . . . for one
> year from the Termination Date (the "Severance Pay
> Period") or until the Term of this agreement,
> whichever is longer, . . . provided that Company
> requests from Employee and Employee complies with
> the terms of Section 8 of this Agreement
> [Employee's Covenants] which shall survive
> termination and provided the conditions for
> remuneration continue to apply[.]

Ellipso, Inc. filed a chapter 11 petition on February 25,
2009.  Page continued to work for the debtor in possession until

the end of June 2009.  On June 30, 2009, at 9:59 a.m., Page sent

an e-mail to Castiel with the subject "NOTICE OF BREACH OF

AGREEMENT."  It stated:

> Dear David,
>
> It is the last day of June and the salary and benefits I
> am due under my employment agreement have not been paid
> current.
>
> According to my calculations, the company owes me at
> least $14,000 and this is immediately due.  This sum
> comprises $2,000 underpayment for March, April and May
> plus $8,000 for June.  This amount does not include
> expenses.
>
> If company is unable to cure this breach, and termination
> is therefore effective, in accordance with the terms of
> my agreement company additionally owes me twelve months
> salary which at $8,000 per month is $96,000 for a total
> of $104,000 plus expenses.
>
> I look forward to receiving payment forthwith.  If you do
> not agree the above calculations [sic], please
> immediately pay me the undisputed amount and advise what
> you believe to be the correct calculation.
>
> Regards, John

*See* Ellipso's Exhibit ZZ.[2]  Later that same day, at 3:55 p.m.,

counsel for the debtor in possession, William Daniel Sullivan,

sent Page a termination letter by e-mail.  *Id.*

## II. The Employment Agreement

Page has a claim for severance pay only if his employment

agreement was in effect when Page was terminated in June 2009.

---

[2]  Exhibit ZZ was admitted at the hearing on Page's motion
for allowance of an administrative claim.  *See* Dkt. No. 1318.
The hearing was held on March 7, 2012.  *See* Dkt. No. 1527.

Ellipsat asserts that the employment agreement expired by its own terms in 2006 because Commercial Service was never achieved and the employment agreement requires that:

> [t]he initial term of employment under this Agreement shall be three months if Commercial Service is not initiated pursuant to the Carrier Services Agreement from the date of this Agreement.  It shall be three years if Commercial Service is initiated within three months and continues throughout the term of this Agreement.  This Agreement shall be automatically renewed for additional one-year terms, provided the conditions of continued commercial services are met and unless either Employee or the Company gives contrary written notice to the other party hereto not less than 90 days before the scheduled expiration of the term of this Agreement.

Employment Agreement § 3.[3]  Page counters that Castiel agreed in June 2006 to continue the employment agreement because the delay in achieving Commercial Service was due to external factors. Page also maintains that the employment agreement must have remained in effect because he continued to receive his $6,000 per month salary, his vacation, and his health benefits.  In essence, Page argues that Ellipsat waived the defense that Commercial Service was not achieved, and has lost that defense.

The doctrine of waiver serves to "avoid a harsh result when the parties have conducted themselves in such a way as to make that result unfair.  It serves to prevent a party from insisting

---

[3]  "Commercial Service" is defined in the employment agreement "as the ability for an Ellipso number in the +8812 range to be dialed from the Public Switched Telephone Network ('PSTN')."  Employment Agreement § 2(b).  "Commercial Activity" is defined "as revenue producing services of at least $25,000 per month, otherwise said sums shall be pro-rated."  *Id.*

on a right upon which he could have insisted earlier but has been found to have surrendered." *K-Com Micrographics, Inc. v. Neighborhood Econ. Dev. Corp. (In re K-Com Micrographics, Inc.),* 159 B.R. 61, 66-67 (Bankr. D.D.C. 1993) (citing *L. Orlik Ltd. v. Helme Prods. Inc.*, 427 F. Supp. 771, 776 (S.D.N.Y 1977)). Under Delaware law, "[a] contractual requirement or condition may be waived where (1) there is a requirement or condition to be waived, (2) the waiving party must know of the requirement or condition, and (3) the waiving party must intend to waive that requirement or condition." *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005) (footnote omitted) (citing *Pepsi-Cola Bottling Co. v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972)); *see also Amirsaleh v. Bd. of Trade of New York, Inc.*, 27 A.3d 522, 529 (Del. 2011).[4]

Though these standards for showing waiver are "quite

---

[4] The employment agreement sets forth that Delaware law governs the contract and neither party disputes that Delaware is the applicable law. *See* Employment Agreement § 11(f). This court will generally enforce a provision designating the governing law for a contract so long as the chosen jurisdiction has a substantial relationship to the parties or the transaction. *U.S. ex rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*, 433 F. Supp. 2d 104, 108 (D.D.C. 2006); *see also Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980) ("[The] parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified."). Here, there is a sufficient relationship to Delaware because Ellipso, Inc. was incorporated in Delaware and the evidence shows a mutual intent of the parties to be bound by the contract. *See U.S. ex rel. Tenn. Valley Marble Holding Co.*, 433 F. Supp. 2d at 108.

exacting," the record in this case indicates that all three requirements are established. *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d at 445. The employment agreement spelled out that the condition for extending the employment agreement beyond three months was the initiation of Commercial Service. As a result, there was a condition that could be waived and Ellipsat and Castiel knew about the condition. This court has already ruled that neither Commercial Service nor Commercial Activity was ever achieved. *See* Oral Decision of March 7, 2012. This means that three months after signing the employment agreement, Ellipsat, Inc. was entitled to terminate Page's employment contract because Commercial Service had not been initiated. *See* Employment Agreement § 3. However, Ellipsat chose to continue to treat Page as an employee by paying him his $6,000 monthly salary, giving him paid leave, and providing him with health benefits for more than three years following the alleged expiration of the contract. By electing to continue to give Page all of the benefits under the employment agreement despite Commercial Service not having been initiated within three months, Ellipsat indicated a clear intent to waive the Commercial Service requirement.

As a consequence, the employment agreement was in effect for the full three-year term and was automatically renewed on January 16, 2009 (the scheduled date for expiration of the agreement

6

after its initial three-year term) because no one had given

written notice to the contrary at least 90 days beforehand.

Accordingly, the employment agreement was in effect on February

25, 2009, when Ellipso filed its bankruptcy petition and Page has

a claim for severance pay.

### III.   Timeliness of the Claim

Ellipsat objects that Page's claim should be denied as

untimely.  The Joint Plan of Reorganization (Dkt. No. 1333)

provides that:

> Unless a motion to assume is filed by the Debtors prior
> to the Confirmation Date, all other Executory Contracts
> and unexpired leases not previously assumed or rejected
> by order of this Court shall be rejected, and any Claim
> with respect to any such rejection shall be filed within
> thirty (30) days after the Confirmation Date or shall
> forever be barred.

Article IV, ¶ 2.  The ordinary bar date for filing claims

was July 13, 2009.  Page filed his claim on the date of

confirmation of the Joint Plan, May 1, 2012, and thus his claim

is timely if the contract was an executory contract.  It is

important to note that whether Page's employment contract was an

executory contract subject to being rejected is relevant to

whether Page's claim was timely, but is not relevant to whether

the claim enjoys any priority under 11 U.S.C. § 507(a)(4).  For

the following reasons, I conclude that the contract was

executory and that Page's claim was timely.

A.

The most commonly used definition of "executory contract"
defines it as "a contract under which the obligation of both the
bankrupt and the other party to the contract are so far
unperformed that the failure of either to complete performance
would constitute a material breach excusing the performance of
the other."  Vern Countryman, *Executory Contracts in Bankruptcy:
Part I*, 57 MINN. L. REV. 439, 460 (1973); 3 COLLIER ON BANKRUPTCY
¶ 365.02[2] (16th ed.); *see also In re Exide Techns.*, 607 F.3d
957, 962 (3d Cir. 2010); *Kaler v. Craig (In re Craig)*, 144 F.3d
593, 596 (8th Cir. 1998); *Elliott v. Four Seasons Props. (In re
Frontier Props., Inc.)*, 979 F.2d 1358, 1364 (9th Cir. 1992);
*Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471 n.2 (6th
Cir. 1989); *Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers'
Union*, 734 F.2d 1020, 1022 (4th Cir. 1984).[5]

---

[5]  Some courts have adopted a "Functional" analysis to
determine whether a contract is executory.  Under this approach,
"a court looks to whether assumption or rejection of the contract
in question would benefit the debtor's estate, regardless of
whether any material obligations remain outstanding on the part
of only one party to the contract."  *In re Worldcom*, 343 B.R.
486, 493 (Bankr. S.D.N.Y. 2006) (applying both tests).  *See also
Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 n.13
(11th Cir. 2007); *Ready Prods., Inc. v. Jarvis (In re Jarvis)*,
2005 WL 758805 (Bankr. D.N.H. Mar. 28, 2005).  The Countryman
test is more stringent, and as a consequence, if a contract is
executory under that test, it is also executory under the
Functional test.  *In re Helm*, 335 B.R. 528, 535 (Bankr. S.D.N.Y.
2006).

In general, courts examine the executory status of a contract as of the date the petition was filed. *See In re Exide Techns.*, 607 F.3d at 962; *Enter. Energy Corp. v. United States (In re Columbia Gas Sys. Inc.)*, 50 F.3d 233, 240 (3d Cir. 1995). When Ellipso filed for bankruptcy, the employment contract was executory because a failure by Ellipso to pay Page's salary or a failure by Page to render services to Ellipso would have been a material breach excusing the performance of the other party.

However, some courts have found that postpetition events can render a contract non-executory. *See COR Route 5 Co., LLC v. The Penn Traffic Co. (In re The Penn Traffic Co.)*, 524 F.3d 373, 381 (2d Cir. 2008) (discussing cases in which the court looked to postpetition events in determining a contract's executory status). Two of the decisions cited by the court of appeals are of no relevance.[6]  Another decision it cited is poorly reasoned, and ultimately irrelevant.  In *In re Total Transportation Service, Inc.*, 37 B.R. 904 (Bankr. S.D. Ohio 1984), the court

---

[6]  *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1061 (3d Cir. 1988), held that a debtor's rights under an insurance policy could not be revived by a motion to assume filed after the contract had expired. *In re Pesce Baking Co., Inc.*, 43 B.R. 949, 957 (Bankr. N.D. Ohio 1984), held that a collective bargaining agreement that expired by its own terms prior to hearing on the debtor's motion to reject was no longer executory because "there can be no performance by either party under the terms of the agreement," but it failed to explain whether that had any consequences.  For all we know, the debtor had fully performed according to the terms of the agreement.  The decision is thus of no relevance.

9

erroneously reasoned that employees' claims for compensation for
postpetition services would be prepetition in character, and not
be administrative in character, if a collective bargaining
agreement were treated as an executory contract and allowed to
be rejected by the debtor.  The reasoning was erroneous because
the employees' postpetition services were compensable as an
administrative claim regardless of whether the collective
bargaining agreement had or had not lost its executory
character, and thus it was irrelevant whether the contract was
executory.  Moreover, the decision held that upon balancing the
competing interests, the collective bargaining agreement should
remain in place and remain enforceable.  The decision is thus
wholly distinguishable.

The final decision cited, *In re Spectrum Information
Technologies, Inc.*, 193 B.R. 400, 404 (Bankr. E.D.N.Y. 1996),
found that an employment agreement was no longer executory
because the debtor had discharged the employee, and the employee
no longer had any material unperformed obligations under the
employment agreement.  Nevertheless, the court ultimately
treated the issue as irrelevant because it deemed the employee's
claim for severance pay as an administrative claim unaffected by
whether the employment agreement was rejected.  Here, in
contrast, the court has ruled that Page's severance pay claim is
*not* an administrative claim.

The issue of executoriness is relevant here for purposes of determining whether Page timely filed his claim based on the bar date the confirmed plan set for filing rejection claims.  For purposes of evaluating the timeliness of an employee's severance claim arising from postpetition termination under a prepetition employment agreement, it makes little sense to test the issue of executoriness of the contract as of the date of termination instead of testing executoriness, pursuant to the general rule, as of the petition date.  Until the employment is terminated, the contract is plainly executory, and the employee would have no obligation to file a proof of claim by the ordinary bar date for filing claims, and only an obligation to file a claim once the executory contract was rejected.  For all the employee knows, the debtor might decide to assume the contract, thus giving rise to the employee's rights under the contract being an administrative claim.  If the contract is terminated after the ordinary bar date for filing claims has expired, and the contract is treated as non-executory based on the event of termination, the employee will have been unjustly deprived of the right to file a claim.[7]

---

[7]  Here, the ordinary bar date for filing claims was July 13, 2009.  Page would have had only thirteen days after his termination on June 30, 2009, within which to file a proof of claim by that bar date.  A creditor generally ought to be entitled to more notice than thirteen days within which to file a claim.

The court, however, would have discretion in a chapter 11 case to grant the employee an enlargement of time to file a proof of claim.  Nevertheless, in a chapter 7 case the court would not have any such discretion if a trustee terminated an employee after the bar date and the contract were treated as non-executory based on that termination.  This weighs in favor of adopting a rule that for purposes of evaluating the timeliness of a proof of claim for severance pay (when the severance occurs postpetition) the executory character of the contract should be tested as of the petition date, not after the termination of the employee.  I conclude that executoriness should be tested as of the petition date, and the contract already was executory as of the petition date.

B.

Even if executoriness should be tested as of the date the plan was confirmed, the contract was still an executory contract.  Following Page's postpetition termination, Page remained obligated to comply with the covenants in § 8 of his contract (including non-compete, non-solicitation, non-publication, and confidentiality provisions) and Ellipsat remained obligated to pay Page termination benefits.  Whether these remaining obligations were material is determined by applicable state law.  *Gen. Datacomm Indus., Inc. v. Arcara (In*

12

re Gen. DataComm Indus., Inc.), 407 F.3d 616, 627 (3d Cir.

2005).

"As a rule, Delaware law treats the covenant not to compete

and the reciprocal promise to pay as material.  As a result, the

failure to make payment will discharge the obligation not to

compete."  In re Teligent, Inc., 268 B.R. 723, 730 (Bankr.

S.D.N.Y. 2001) (citing Dickinson Med. Grp., P.A. v. Foote, 1989

WL 40965, at *8 (Del. Super. Ct. March 23, 1989) (failure to pay

physician's compensation as required under terms of contract was

a material breach discharging physician's obligation to comply

with the covenant not to compete)).  But see In re Schneeweiss,

233 B.R. 28, 32 (Bankr. N.D.N.Y. 1998) ("An obligation to comply

with a restrictive covenant, such as a covenant not to compete,

does not constitute a material obligation, and a contract under

which one party must refrain from competing is therefore not

executory under the Countryman definition of an executory

contract."); In re Spectrum Info. Techs., Inc., 190 B.R. 741,

750 (Bankr. E.D.N.Y. 1996).

## C.

Moreover, Ellipsat has not advanced any argument in this

proceeding with respect to the executory status of the

employment agreement, much less an argument suggesting that

Page's employment agreement was not executory.  Indeed, in a

previous filing, Ellipso appears to treat Page's employment

agreement as executory.[8]

Accordingly, Page's employment contract was an executory contract both as of the petition date and as of the confirmation date.  Consequently, Page's Claim No. 1-3, filed on the same day the court entered the order confirming the Joint Plan, was thus timely.  *See* Joint Plan, Article IV, ¶ 2.  Moreover, in the court's discretion, it would allow Page's claim to be treated as timely even if not based on a rejected executory contract, based on the uncertainties as to when the executoriness of a contract is to be tested.

IV. Rejection of the Employment Agreement

Because the employment contract was executory, it was rejected upon confirmation of the Joint Plan.  The rejection of an executory contract constitutes a breach of the contract and the breach is deemed to have occurred "immediately before the date of the filing of the petition."  11 U.S.C. § 365(g).  Therefore, in evaluating Page's severance pay claim, I treat the termination of his employment agreement as having occurred just prior to Ellipsat's filing for bankruptcy.  *See Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.*), 64 F.3d 141, 144

---

[8]  *See Opposition of Ellipso, Inc. to John Page's Motion to Allow Post-Petition Claim* (Dkt No. 1335) ("This conclusion is not changed by the fact that Page continued to work for Ellipso for a period after the petition was filed. A debtor in possession's mere receipt of benefits under an executory prepetition contract does not constitute an acceptance of the contract . . ..").

(4th Cir. 1995) ("The rejection of an executory contract
constitutes a breach of the contract, and a party's damages
resulting from that rejection are treated as a pre-petition
claim and receive the priority provided to general unsecured
creditors.").

V. Whether Page "Earned" the Severance Pay

A. Page's Termination

Ellipsat has failed to establish that Page was terminated
for cause.  There is no dispute that Page was not paid any
salary in June 2009.  In response, Page sent notice to Castiel
of that breach by e-mail on June 30, 2009 at 9:59 a.m.  Counsel
for the debtor in possession sent Page's termination at
3:55 p.m. on that same day.  Though Ellipsat claims that Page
was terminated for cause because he competed with the debtor by
pursuing his own plan of reorganization, this court has already
found that Ellipsat knew that Page was devoting time to working
on his own plan and "there is no evidence that the debtor in
possession objected to this use of Page's time." *See In re
Ellipso, Inc.*, 2012 WL 827103, at *4 (Bankr. D.D.C. Mar. 9,
2012) (Dkt. No. 1535).  Instead, the termination letter sent by
Ellipsat on June 30, 2009 appears to have been sent in response
to Page's notice of breach.[9]  Accordingly, Page was not

---

[9]  The e-mail transmitting, as an attachment, the letter
terminating Page is in evidence, but the attached letter is not
in evidence.

terminated for cause, and this triggered the severance pay provision of the employment agreement.[10]  *See* Employment Agreement § 7(d), *supra* Part I.

## B. Section 507(a)(4)(A)

Page argues that his claim for severance pay is entitled to priority under 11 U.S.C. § 507(a)(4)(A).  That provision gives fourth priority to an "allowed unsecured claim[] . . . to the extent of $10,950 for each individual . . . earned within 180 days before the date of the filing of the petition . . . for (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual."[11]  The issue is whether Page's severance pay was "earned within 180 days before the date of the filing of the petition."

---

[10]  At the hearing, Ellipsat argued that Page's assertion that Ellipso's filing for bankruptcy triggered the termination provisions was incorrect because filing for bankruptcy cannot trigger the termination provisions unless the contract so states. However, the court does not understand Page to be making this argument.  If Page has advanced this argument, it has no merit. The event triggering the termination provisions was Ellipso's effecting a termination of Page, which, as discussed, is deemed to have occurred immediately before the date of the filing of the petition.

[11]  Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. 109-8, 119 Stat. 51 (2005), this provision was codified at 11 U.S.C. § 507(a)(3) and provided for a 90-day prepetition priority period, as opposed to the current 180-day period, and provided a lower maximum cap ($4,925).

Courts that have addressed whether severance pay claims are entitled to priority often distinguish between severance pay based on length of service and severance pay in lieu of notice of termination. *See, e.g., In re Roth Am., Inc.*, 975, F.2d 949, 957 (3d Cir. 1992); *In re Uly-Pak, Inc.*, 128 B.R. 763, 767 (Bankr. S.D. Ill. 1991) ("The distinction between the two categories of severance pay . . . has become ossified into a rule of law.").

When applying 11 U.S.C. § 507(a)(4) (or its predecessor, § 507(a)(3)), courts have generally found that severance pay in lieu of notice is "earned" at termination, because the employee earns the severance pay upon being in good standing when the employer fails to give the required notice. *See McCloskey v. Div. of Labor,* 200 F.2d 402, 403 (9th Cir. 1952) (decided under § 64(a)(2) of the Bankruptcy Act); *In re Jeannette Corp. v. Gilardi (In re Jeannette Corp.)*, 118 B.R. 327, 329-30 (W.D. Pa. 1990) ("[I]f the right to severance pay is based upon failure to give notice and *not* based on length of service, it is 'earned' when termination occurs . . .."); *In re Powermate Holding Corp.*, 394 B.R. 765, 775-76 (Bankr. D. Del. 2008); *In re Guardianship Trust & Program, Inc.,* 80 B.R. 268, 269-70 (Bankr. D.N.H. 1987).

Conversely, when severance pay based on length of service is at issue, most courts have determined that the severance pay is "earned" over the course of the employee's service because the

17

severance pay is a component of compensation.  These courts have concluded that the amount of severance pay entitled to priority under § 507(a)(4)(A) is that portion of the total severance pay attributable to the priority prepetition period.  *See In re Russell Cave Co., Inc.*, 248 B.R. 301, 304-05 (Bankr. E.D. Ky. 2000); *In re Yarn Liquidation, Inc.*, 217 B.R. 544, 546 (Bankr. E.D. Tenn. 1997); *Roeder v. United Steelworks of Am. (In re Old Electralloy Corp.)*, 167 B.R. 786, 796 (Bankr. W.D. Pa. 1994); *In re Jeannette Corp.*, 118 B.R. at 330; *In re Nw. Eng'g Co.*, 43 B.R. 603, 605 (Bankr. E.D. Wis. 1984).  The Fourth Circuit, however, has taken exception to this general rule.  In *Matson v. Alarcon* the Fourth Circuit held that severance pay tied to length of service does not accrue day by day, but rather that "an employee 'earns' the full amount of 'severance pay' on the date the employee becomes entitled to receive such compensation . . .."  651 F.3d 404, 409 (4th Cir. 2011).

Page's severance pay is neither severance pay in lieu of notice of termination nor is it severance pay based on length of service.  Instead, his employment agreement provides for severance pay for termination without cause.  Page "earned" his severance pay upon satisfaction of the conditions in his employment agreement entitling him to compensation upon termination.  Therefore, Page "earned" the full amount of his severance pay when the debtor terminated him without cause.  *See*

18

*In re Garden Ridge Corp.*, 2006 WL 521914, at *2 (Bankr. D. Del.
Mar. 2, 2006) (finding that employee's severance pay for
termination without cause "was 'earned' no earlier than upon
termination of employment").

Because Page's employment agreement was rejected
postpetition, the breach is deemed to have occurred the day
before Ellipso, Inc. filed for bankruptcy.  Applying § 365(g)
and § 507(a)(4)(A) together, Page "earned" his severance pay
"immediately before the date of the filing of the petition",
which is necessarily within the 180-day priority period of
§ 507(a)(4)(A).  *See In re Dornier Aviation (N. Am.), Inc.*, 2002
WL 31999222, at *8 n.11 (Bankr. E.D. Va. Dec. 18, 2002) ("Since
[the employee's] employment was terminated post-petition, and
since the legal effect of rejecting the employment agreement was
to make the breach effective as of the filing date, his right to
severance pay is properly treated as having occurred within 90
days of the filing of the petition and would therefore be
entitled to third-level priority, at least . . . to the extent
of [the statutory cap] . . ..") (applying the pre-BAPCPA version
of the provision).

C.  The Executoriness of the Contract
Does Not Affect the Priority of the Claim Under § 507(a)(4)(A)

Even if executoriness is tested as of the date of confirmation of the plan, and even if the contract was *not* an executory contract as of that date, the severance pay claim would still be treated as one for severance pay earned as of the petition date.

The rejection power's purpose is to permit the estate to be relieved of burdensome obligations under a prepetition contract. *In re The Penn Traffic Co.*, 524 F.3d at 382.  A prepetition contract that is non-executory remains only a prepetition contract without the necessity of rejection, and the non-debtor party's claims under that contract can only be asserted as a prepetition claim against the estate.  There is no need for a trustee to reject a prepetition contract she knows is non-executory, other than to guard against the possibility of the claim "riding through" the bankruptcy case and remaining enforceable in the event a court mistakenly deems it to have been an executory contract.  *See* David M. Fournier and John H. Schanne II, *The Executory Contract Ride Through: A Doctrine from the Past Provides an Option for the Present,* 2009 NORTON ANN. SURV. BANKR. L. 10 (2009).  In other words, when the contract is *not* executory because only the debtor owes material obligations to the other party, the prepetition contract does not need to be

rejected as it already only gives rise to a prepetition, non-administrative claim against the estate.

This case deals with a contingent claim for severance pay. Even if Page's employment agreement were not executory, Page's claim would still be based on a prepetition contract with a contingent right on the petition date to severance pay if he were terminated without cause. His severance claim (unlike his postpetition salary claim) would not be an administrative claim for services rendered to the estate. The right to severance became non-contingent upon Page being terminated postpetition, but as a contingent claim in existence on the petition date, the claim would still have to be treated as a prepetition claim. The date on which the right to severance pay was earned would be treated as the petition date because the prepetition contingent severance claim had not ripened into a non-contingent claim before then.

Therefore, the priority character of the claim does not change based on whether the claim is treated as a prepetition claim based on rejection of an executory contract or, instead, is treated as a prepetition obligation because the claim is not an executory contract. It follows that if Page owed no material obligations to the estate, such that there was no executory contract to assume or reject, then his rights to severance pay remained necessarily a prepetition claim. And if Page *did* have

material obligations to the estate, the confirmed plan rejected

the executory contract, and rendered the severance claim a

prepetition claim (in contrast to an administrative claim as

would have occurred had there been assumption).

D. Comparison to Analysis under Section 503(b)(1)(A)

That Page "earned" his severance pay on the date of his

termination does not contradict this court's earlier finding

that Page's claim for severance pay was not an administrative

expense under 11 U.S.C. § 503(b)(1)(A), which grants priority as

an administrative expense to "the actual, necessary costs and

expenses of preserving the estate, including . . . wages,

salaries, and commissions for services rendered after the

commencement of the case." The analysis under § 503(b)(1)(A)

boils down to determining the extent to which the severance pay

is compensation for services the employee provided postpetition.

*See Mason v. Official Comm. of Unsecured Creditors (In re FBI*

*Distrib. Corp)*, 330 F.3d 36, 46-47 (1st Cir. 2003); *Bachman v.*

*Commercial Fin. Servs. (In re Commercial Fin. Servs.)*, 246 F.3d

1291, 1295 (10th Cir. 2006). The analysis under § 507(a)(4)(A)

differs because it focuses on when the severance pay was

"earned" rather than whether the employee supplied postpetition

consideration for the claim for severance pay.

While Page's termination occurred after commencement of the

case, Ellipso incurred the contingent obligation to pay

severance when it signed the employment agreement in 2006. *See In re Robb & Stucky Ltd., LLLP*, 2011 WL 3948805, at *2 (Bankr. M.D. Fla. Sept. 7, 2011) ("The fact that [the employee's] termination occurred post-petition does not alter the fact that the Debtor's liability for [ ] severance compensation arises from the pre-petition act of entering into the Employment Agreement."). Therefore, Page "earned" his severance pay upon termination in the sense that he became entitled to it at that point; however, his postpetition services to Ellipso did not give rise to his right to severance pay.

Accordingly, Page's claim for severance pay, although based on a postpetition termination without cause, is treated as a prepetition claim arising as of the filing date, and is not an administrative claim.  Nevertheless, the claim is entitled to priority under § 507(a)(4)(A) up to the statutory maximum of $10,950.[12]

---

[12]  For cases commenced on or after April 1, 2010, the statutory maximum in 11 U.S.C. § 507(a)(4) was increased to $11,725.  75 Fed. Reg. 8747-48 (Feb. 25, 2010).

## VI. Conclusion

For all of these reasons, Page is allowed a fourth priority unsecured claim for $10,950 pursuant to § 507(a)(4)(A).  The balance of his severance pay claim, $61,050, is allowed as a general unsecured claim, not entitled to priority under 11 U.S.C. § 507.

[Signed and dated above.]

Copies to: John Page; Recipients of e-notification of filings.